### LAWRENCE–WILLIAMS CO. v. SOCIETE ENFANTS GOMBAULT ET CIE.
#### Nos. 5669, 5670.
Circuit Court of Appeals, Sixth Circuit.
Oct. 8, 1931.

A. A. Stearns, of Cleveland, Ohio (Stearns, Chamberlain & Royon, of Cleveland, Ohio, on the brief), for Lawrence-Williams Co.

Lanier McKee, of New York City (Hervey, Barber & McKee, of New York City, Garfield, Cross, MacGregor, Daoust & Baldwin, of Cleveland, Ohio, Arthur Wm. Barber, of New York City, and James R. Garfield and Arthur D. Baldwin, both of Cleve-

land, Ohio, on the brief), for Sociète Enfants, etc.

Before DENISON, MOORMAN, and HICKS, Circuit Judges.

DENISON, Circuit Judge.

We herein designate as plaintiff the Gombault Company, plaintiff below, and as defendant the Lawrence-Williams Company, defendant below. Upon a former appeal, reported in 22 F.(2d) 512, we held that the trade-mark rights involved belonged to plaintiff, and affirmed an interlocutory decree for injunction and accounting. Thereafter the master ascertained and reported the profits which defendant had made, the report was confirmed, and a decree entered for the recovery of the profits so found. This appeal follows.

Upon this record there appears an important fact which was not shown by the former record. The contract relations between plaintiff and defendant terminated February 18, 1925. On May 26, 1925, plaintiff entered into a new contract with Schnabel, by which the latter received and assumed practically the same status and rights which defendant had held under the old contract; that is, Schnabel became the exclusive representative of plaintiff in the United States and Canada, and was the exclusive distributor of the trade-marked product. Plaintiff manufactured this product in France under a secret formula and furnished it to Schnabel at a stated price. Plaintiff could sell to no one else and Schnabel could procure it from no one else. The entire business of selling in the United States and Canada belonged to Schnabel, and was under his exclusive control. He had the exclusive right to use the trade-mark in question, and not even plaintiff could have made a sale or used its trade-mark in this country, excepting as the business was done through Schnabel. By analogy to patent contracts, Schnabel became exclusive licensee to use and sell, while plaintiff retained the exclusive right to make. There was therefore a period of only about three months within which plaintiff had the unincumbered title to the trade-mark, and had whatever rights flowed therefrom under these circumstances. It also became a part of the situation that, before this suit was commenced (September, 1925), plaintiff had conveyed to Schnabel certain interests in the trade-mark rights. Schnabel was not a party to this suit and is not a resident of the district. After our former decision was announced, defendant filed

a petition for rehearing, setting up the fact of the conveyance to Schnabel and his interest, making some excuse for not earlier raising the question, and asking that our opinion be withdrawn and the bill ordered to be dismissed because Schnabel was a necessary party. We treated this as merely a belated raising of the question of parties and, for that reason, denied it. Shortly thereafter, defendant applied to the master to discontinue the accounting proceedings for profits, upon the ground that Schnabel was the only one entitled to recover these profits. The master held that it was not within his province to pass upon such question, but that it was his duty to make full report and leave any such question for the court. One of the defendant's exceptions to the master's report was that "the profits of the defendant under the circumstances of this case are not recoverable." Passing upon the master's report, the District Judge did not specifically consider the effect of the outstanding Schnabel interest, but thought that the general liability for all profits was established by the former decrees.

Plaintiff now makes two objections to the present consideration of the question whether defendant was generally liable to plaintiff for profits. The first is that the court below, in the order of reference which directed the accounting, did not reserve until the coming in of the master's report the consideration of whether a general liability for profits existed. Upon this point counsel differ in their construction of the language of the trial judge in his opinion and order thereon; but we do not see that their difference is material. The order of reference was interlocutory; the right to consider or reconsider all questions upon the coming in of the master's report, was necessarily reserved to the court; it makes no difference whether the reservation was express.

The next point is that, the defendant's liability for profits having been adjudicated by this court on the former appeal, it is not open for review on the present appeal. Since the decision in Messinger v. Anderson, 225 U. S. 436, 444, 32 S. Ct. 739, 56 L. Ed. 1152, we have frequently had occasion to say that we have the power, upon a second appeal, to review and revise a conclusion reached upon the first appeal, and that, although the first opinion becomes the law of the case for the court below, it does not in the strictest sense have that character in this court—although such review and change of opinion will occur only in very exceptional

cases. See Chesapeake & O. R. Co. v. Mc-Kell (C. C. A.) 209 F. 514.

We have no particular occasion here to apply this principle, because we do not regard our former opinion as intended to decide, or as effective to decide, the question now made. It is true that the decree below had, in customary formula, directed an accounting of profits and damages, and that we affirmed this decree; but we find no adjudication that any particular money or class of money received by defendant did constitute recoverable profits. We interpret the decree as intended to mean that there should be an accounting of profits which the defendant had received and that there should be recovery of whatever profits, whether the whole or part of those received by defendant, which, under the applicable rules of equity, ought to be treated as having been earned for and as belonging to the plaintiff. Plainly this might or might not reach all or any of the actual profits which defendant had received in the general subject-matter, when and after their character was ascertained, and the necessary basis for awarding judgment was seen.

Though the assignments of error complained generally of the order to account for profits and damages, the contention that defendant's actual profits were of the character which they now turn out to be and were therefore not recoverable, was not presented in brief or oral argument, or considered in our opinion. It is not foreclosed against our present examination.

▉▉▉ These two objections being insufficient, we come to the controlling question, whether these particular profits are recoverable by the plaintiff. Plaintiff relies upon the principles which in patent cases support the rule that the profits derived from selling a patented article equitably belong to the owner of the patent. Some decisions indicate just as broad a rule as to technical trade-marks. The analogy does not seem complete. A patent monopoly is property in itself. It is in gross. It is not appurtenant to anything. A trade-mark, on the other hand, has no existence in gross. It is collateral and appurtenant to the carrying on of a particular business. It endures without time limitation so long as the business does; it disappears upon the discontinuance of the business. These trade-mark principles are elementary, but in late years they have been extended and emphatically applied by the Supreme Court in the Hanover Milling Company Case, 240 U. S. 403, 36 S. Ct. 357, 60 L. Ed. 713,

and the Rectanus Case, 248 U. S. 90, 39 S. Ct. 48, 63 L. Ed. 141. These cases hold that although a plaintiff has duly adopted a proper trade-mark and is carrying on (interstate) business under it, yet if he has not occupied with his business a certain part of the territorial field (or, at least, if he has unreasonably delayed so to do) a defendant may adopt the same trade-mark in that unoccupied territory and acquire at least an efficient defensive right. Accordingly, it is not entirely clear why a plaintiff trade-mark owner, who has not yet established his mark or his business in a certain territory, and as to whom there is therefore no natural inference that he would have made the sales if defendant had not, can be entitled to recover defendant's profits in that territory; but that is unnecessary broadly to decide, because we have here, after May 26, 1925, a case where plaintiff has distinctly parted with any such right. The grant to Schnabel of the exclusive right to use the trade-marks in the United States and Canada necessarily carried to Schnabel the right to recover the profits (above plaintiff's price to Schnabel) arising after that date; because these distributor's profits to be derived from using the trademark in this country equitably belong to Schnabel, and it is Schnabel, not the plaintiff, who would have realized them if it had not been for the infringement.

The Hamilton-Brown Shoe Company Case, 240 U. S. 251, 36 S. Ct. 269, 60 L. Ed. 629, is relied upon as establishing the invariable liability to the trade-mark owner for the infringer's profits. The opinion does not stress the collateral and appurtenant character of the trade-mark rights [1]; it indicates, rather—though it does not expressly declare —an absolute right to recover the infringer's profits regardless of the extent of the plaintiff's business. An examination of the record and briefs shows that there were parts of the country—practically whole states—in which plaintiff, its business and its trade-mark, were unknown, and yet plaintiff was permitted to recover defendant's profits in these regions. The principle seems to be that as to territory unreached by plaintiff's trade,[2] it may be inferred that there was a latent demand for plaintiff's goods which it would eventually have supplied, except for the infringement, and hence it has sufficient equitable right to the infringer's profits.

---

[1] Although in the same volume and written by the same Justice as the Hanover opinion.

[2] And in the absence of any conflict of ownership in the same trade-mark.

No application of this principle can reach the situation where the general trade-mark owner has transferred to another those rights from the exercise, of which the profits arose.[3]

■ Another contention, as to profits, is that profits for trade-mark infringement should be given only where the infringement has been willful; that this infringement was under a good faith claim of right; and therefore that there should be no profits until our final decree, or at least until the decree of the District Court. We do not understand upon what theory the profits should be so confined, and do not get anything satisfactory to that effect out of the authorities cited. However, the case does not sufficiently show that the infringement was not willful. Defendant knew all the facts and, under a mistaken view of the law, claimed the trade-mark for itself. Its use of the mark was deliberate. The situation is about the same as where a defendant infringes a patent under the advice of counsel that it is invalid. Such infringement is not usually so willful as to justify treble damages, but we think it does justify, here as there, turning over to the plaintiff the actual profits received.

The strongest argument presented along this line for defendant is that during most of this accounting period (but not during the three months February-May) the plaintiff, through Schnabel, was guilty of unfair competition in using defendant's packages. When Schnabel continued this use after cross-injunction against plaintiff, plaintiff escaped contempt proceedings by disclaiming responsibility for Schnabel; and yet, the claim is that during the accounting period, plaintiff acquiesced in and profited by Schnabel's infringement of defendant's rights, so that plaintiff ought not to have, in equity, any accounting of profits, against defendant. This is quite forceful; but it may be passed without decision, as we do not allow profits

except for the three months—a period to which this defense does not apply.

■ It seems clear enough that for the reasons stated the plaintiff has no right to recover profits accruing after May, 1925. Nor are we inclined to permit any amendment which would bring in Schnabel as a party-plaintiff and permit him to recover for the period covered by this controversy. The necessity that he should be a party was directly brought to plaintiff's attention upon the motion for rehearing in this court and at the beginning of the proceedings before the master. Plaintiff deliberately elected to proceed on its own account and claim the profits for itself, and not treat Schnabel as a party in interest. We see no reason for not holding plaintiff to this election. Birdsell v. Shaliol, 112 U. S. 485, 487, 5 S. Ct. 244, 28 L. Ed. 768. It may be that Schnabel could now put in a claim for profits in an independent suit to be brought by him, reaching back for six years. On the other hand, his (probable) acquiescence in plaintiff's claim of right to these same profits might bar Schnabel from any such present claim.

A further reliance for recovery of profits is based on section 99, title 15, USCA, which declares the right of the registered trade-mark owner to recover damages and profits. We do not regard this as going further than did the main decree in this case. It does not declare what profits, nor contemplate entire profits when the trade-mark owner has parted with his equitable title.

■ The three months' period from February to May, 1925, seems to be fairly within the ruling in the Hamilton-Brown Case. Plaintiff was not carrying on its business itself, so that it would probably not have made these profits; but it had the right to do so, and itself make the sales which its trade-mark promoted. Its position was essentially the same as that of the Wolf Company with reference to territory which its business did not then reach. The master's report does not segregate this three months' period, and with one exception the criticisms made upon the whole accounting are, when restricted to this three months' period, not of enough importance to justify discussion. The exception is as to interest on capital. Under the facts interest should be allowed as an expense of operation. The entire invested capital was used in the unitary business which produced the profits. Seabury v. Am Ende, 152 U. S. 561, 14 S. Ct. 683, 38 L. Ed. 553; Fox Co. v. Underwood (C. C. A. 6) 287 F. 447, 452.

---

[3] It is insisted that due regard for Saxlehner v. Eisner, 179 U. S. 19, 40, 21 S. Ct. 7, 45 L. Ed. 60 (and see same case [C. C.] 88 F. 61; [C. C.] 127 F. 1023; [C. C. A.] 138 F. 22), dictates the other result. It is true that the Apollanaris Company had an exclusive United States distribution contract, which expired in 1896, and that the final decree for profits, awarded to the underlying foreign owner of trade mark and dress, covered a period before 1896 as well as after; but the point that plaintiff could not have defendant's distribution profits because they belonged to the Apollanaris Company is not mentioned in any one of the numerous opinions. The Apollanaris contract and conduct do not fully appear. In a degree, the claimed holding "lurks" in the case; but in so far as it may thus lurk, it is one of those sub silentio holdings which are not considered binding in other cases.

In addition to profits for this short period, the true measure of plaintiff's recovery is the damages which it suffered. It should be inferred—though the inference is more or less arbitrary—that during the whole infringing period, defendant would have sold plaintiff's article if defendant had not been making its own. It would follow that plaintiff lost the sales of its product to defendant to the extent measured by defendant's manufacture of its own, and so plaintiff's damages are the profits which it would have made.

Plaintiff should not recover either damages or profits extending back of February, 1925. It might have that right, if, in fact, prior to that date, defendant had been filling part of its orders with its own manufacture; but the bill is drawn upon the theory that the infringement began only in February, 1925, and there is no complaint as to what happened before that date. If there was afterwards a discovery of earlier wrongs, there should have been an amendment to the bill. There is in the record no proof that there was an infringement before this date, but only a statement by the plaintiff before the master that it had reason to believe there was such earlier infringement. Upon this showing, the master and Judge Jones properly declined to go back of 1925.

The decree is reversed, and the case remanded for an accounting of damages and profits in accordance herewith.