## C. B. SHANE CORPORATION v. PETER PAN STYLE SHOP, Inc.

### No. 47C1382.

United States District Court
N. D. Illinois, E. D.
March 2, 1949.

Banning & Banning, Chicago, Ill., for plaintiff.

Casper M. Ooms, Chicago, Ill., for defendant.

BARNES, Chief Judge.

This cause is before the court for decision after a hearing on the merits.

The complaint alleges that this action arises under Section 19 of the Trade-Mark Act of 1905, 33 Stat. 724, 15 U.S.C.A. § 99 etc. and under the Trade-Mark Act of 1946, Section 32 et al., 15 U.S.C.A. § 1114 et seq., that plaintiff is a corporation of Illinois, with factories and principal offices in the city of Chicago, Illinois; that defendant is likewise an Illinois corporation, with its principal offices located in said city of Chicago; that plaintiff is, and since 1929 has been, engaged in the business of manufacturing, selling and distributing raincoats, topcoats, and overcoats for men and, since 1938, topcoats and overcoats for women; that in March, 1936, plaintiff adopted and since that time has continuously used upon and in connection with the advertising and sale of its topcoats and overcoats the designation "Season Skipper" as its trade-mark for its said goods; that said trade-mark was registered on July 28, 1936, for men's overcoats and topcoats, and on February 13, 1940, for men's, boys', women's, and girls' overcoats and topcoats; that plaintiff's use of said trade-mark has been accompanied by the display of the statutory notice of registration; that plaintiff has built up for its coats and the trade-mark "Season Skipper," identifying the same, a unique and exceedingly valuable reputation and good

will; that the defendant, with knowledge of the rights of the plaintiff, and with the intent to appropriate to itself a part of the plaintiff's good will, symbolized by its trademark, did, against the will of the plaintiff and in violation of its rights and for the purpose of confusing and deceiving the public and of depriving an undeserved benefit from such confusion and deception, commenced to and still does advertise and sell "in commerce which may lawfully be regulated by Congress," women's coats, not products of the plaintiff, designated "Twin Season" and "All Season Zipper"; that said designations "Twin Season" and "All Season Zipper" are colorable imitations and studied simulations of plaintiff's trade-mark "Season Skipper" and so similar thereto as to be calculated and likely to lead, and the purchasing and wearing public has been led to believe erroneously, that defendant's coats designated "Twin Season" and "All Season Zipper" are "Season Skipper" coats; that said acts of defendant constitute unfair competition in trade affecting plaintiff's rights in and to its trade-mark; that by reason of defendant's use of the designation "Twin Season" and also "All Season Zipper" the distinctiveness of plaintiff's trade-mark "Season Skipper" has been weakened and diluted and will be irreparably injured; that plaintiff has requested defendant to desist from its conduct aforesaid but defendant has refused to do so; that defendant has unlawfully made profits to which it is not entitled and has unjustly enriched itself at plaintiff's expense; and that plaintiff has sustained damages and irreparable injury. The plaintiff prayed that temporary and permanent injunctions be granted, that the plaintiff recover damages, that the defendant be required to account for gains and profits, that the defendant be required to deliver up for destruction all advertising material which bears the term "Season Skipper" or "Twin Season," or "All Season," and that plaintiff have general relief.

The defendant, in its answer, says it does not do any manufacturing of any kind of goods, that it operates a retail shop serving customers in its neighborhood; that it is not engaged in interstate commerce, or any other commerce which may lawfully be regulated by Congress. The defendant denies that it has infringed upon any registration of the plaintiff, that it has competed unfairly with plaintiff, or that it has violated or infringed upon any rights of the plaintiff, and denies the jurisdiction of this court. The defendant admits that the plaintiff has used the term "Season Skipper" upon and in connection with the advertising and selling of topcoats, but says that it does not know when the plaintiff adopted said term or the extent of the use thereof by plaintiff. Defendant denies that the trade and purchasing public have for 11 years identified and called for and do identify and call for plaintiff's coats by the trade-mark "Season Skipper." Defendant denies that the plaintiff is the sole and exclusive owner of the trade-mark "Season Skipper," and of the good will of the business in which said trade-mark has been and is used. Defendant admits that registrations No. 337,140 and No. 375,283 were issued, but denies that said registrations or either of them were issued according to law. Defendant avers that said registrations are void because they were issued contrary to law. Defendant denies that the plaintiff is the sole and exclusive owner of the alleged trade-mark "Season Skipper," or the word "season," or the word "skipper" in connection with the labeling, advertising and selling of topcoats or overcoats with removable inner lining and zipper. The defendant admits that it has advertised and sold, at retail only, at its place of business, Peter Pan Style Shop, in Chicago, Illinois, at various times since the year 1940, topcoats designated as "Twin Season" or "Twin Season Climate-Tamer," which were made and labeled by Manchester Modes, of Manchester, Connecticut, from whom said defendant has purchased the same. Defendant admits that it has used, at various times beginning in 1932, and is now using, the descriptive terms "Season" and "All Season" in the advertising and selling of coats either with or without removable inner lining and zipper. Defendant denies that the designations "Twin Season" and "All Sea-

son Zipper" are colorable imitations or studied simulations of plaintiff's trademark "Season Skipper," and denies that they are so similar thereto as to be calculated and likely to lead the purchasing and wearing public to believe that defendant's coats designated "Twin Season" and "All Season Zipper" are "Season Skipper" coats, originating with the plaintiff. Defendant denies that the use by the defendant of the terms "Twin Season" and "All Season Zipper" reflect upon or injure the reputation of the plaintiff or its merchandise identified by plaintiff's trade-mark "Season Skipper." Defendant denies that its use of the terms "Twin Season" and "All Season Zipper" has weakened and diluted the distinctiveness of plaintiff's trade-mark "Season Skipper," and denies that the acts of the defendant constitute unfair competition in trade affecting plaintiff's rights in and to its trade-mark "Season Skipper." Defendant avers that plaintiff is well aware of the fact that defendant has never used the term "Season Skipper" in labeling, advertising, or selling of coats or any other merchandise. Defendant denies that the terms "All Season," "Twin Season," or "Twin Season Climate-Tamer" are confusingly similar to plaintiff's alleged trade-mark "Season Skipper." After making the foregoing admissions, and others, and the foregoing denials, and perhaps others, the defendant, in its answer, sets up, as a first defense, that the complaint fails to state a cause of action upon which relief may be granted; as a second defense, defendant says that the court lacks jurisdiction of the parties for the reason that both the plaintiff and defendant are citizens and inhabitants of the State of Illinois, and the registrations claimed by plaintiff are void because the word "season" is a common English word in general use in the clothing industry and is descriptive of topcoats and overcoats; as a third defense, that the court lacks jurisdiction over the defendant and the subject matter of this suit for the reason that defendant is engaged solely in the retail business in the City of Chicago and has never used the terms "Twin Season," "All Season," or "Twin Season Climate-Tamer" in commerce which may lawfully be regulated by Congress, and has never used the term "Season Skipper" at all in interstate or intrastate commerce; and, as fourth and fifth defenses, the defendant sets forth the folowing:

### "Fourth Defense

"26. Continuously since about the year 1940, the defendant, has purchased from the Ellis Coat Company, Inc., of Manchester, Connecticut, doing business as Manchester Modes, women's coats with removable inner lining and zipper, with labels attached to said coats bearing the terms 'Twin Season' or 'Twin Season Climate-Tamer.' The defendant never has made any claim of ownership of said terms 'Twin Season' or 'Twin Season Climate-Tamer' or the word 'season' or 'all season.' Defendant merely advertises and sells such coats in the ordinary conduct of its retail business, mainly to customers in the shopping district in its immediate vicinity. The defendant avers that its use of the terms 'season,' 'All Season,' 'Twin Season' or 'Twin Season Climate-Tamer' have always been in good faith. Defendant denies that its use of said term, or any of them, has caused, or is reasonably likely to cause, confusion or mistake or to deceive purchasers.

### "Fifth Defense

"27. Defendant avers that beginning in 1932, and at various times since that year, the defendant has used the descriptive word 'season' in advertising and selling of wearing apparel, including coats, and that said date of adoption and use by the defendant is long prior to the 'month of March, 1936' which is the date that the plaintiff in paragraph 7 of its complaint alleges that it adopted the term 'Season Skipper' in connection with the sale of topcoats and overcoats. Defendant avers that the word 'season' in connection with topcoats is descriptive, indicating that the coats are adaptable for use in different seasons of the year. Neither the plaintiff, the defendant nor anyone else has a monopoly or exclusive right of use or ownership of the word 'season' either

alone, or in combination with other words and syllables. The word 'season' is in common use in the clothing industry, and such use began long prior to March 1936, particularly on topcoats and overcoats with removable inner lining and zipper, to describe the coats as being constructed and adaptable for use during different seasons by zipping out the inner lining in warm weather and replacing the inner lining in cold weather, to suit the convenience and comfort of the wearer."

There are other defenses set forth, and a counterclaim is included in the answer, but the court does not believe that it is necessary to set them forth here, though some of the other defenses may be good.

The court thinks that the only issues that need be disposed of are: (1) Did the acts of the defendant which are complained of take place in commerce which may lawfully be regulated by Congress; and (2) Did defendant infringe upon plaintiff's trademark, assuming it to be valid?

The court need not consider the Trade-Mark Act of 1905, since that act has been repealed by the Trade-Mark Act of 1946, 15 U.S.C.A. § 1051 et seq. Philco Corp. v. F. & B. Mfg. Co., 7 Cir., 170 F.2d 958; California Fruit Growers Exchange v. Sunkist Baking Co., 7 Cir., 166 F.2d 971.

Section 1 of the Trade Mark Act of 1946 provides that: "The owner of a trademark used in commerce may register his trade-mark under this Act * * *."

Section 32 of the Act reads, in part: "(1) Any person who shall, in commerce, (a) use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of any registered mark in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services; or (b) reproduce, counterfeit, copy, or colorably imitate any such mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used upon or in connection with the sale in commerce of such goods or services, shall be liable to a civil action by the registrant for any or all of the remedies hereinafter provided * * *."

Section 33, in subsection (b) thereof, provides as follows: "* * * the certificate shall be conclusive evidence of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate * * * except when one of the following defenses or defects is established: * * * (4) That the use of the name, term, or device charged to be an infringement is a use, otherwise than as a trade or service mark, of * * * a term * * * which is descriptive of and used fairly and in good faith only to describe to users the goods * * * of such party, * * *."

Section 45 provides that:

"In the construction of this Act, unless the contrary is plainly apparent from the context—* * *

"The word 'commerce' means all commerce which may lawfully be regulated by Congress.

*     *     *     *     *     *

"For the purposes of this Act a mark shall be deemed to be used in commerce (a) on goods when it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto and the goods are sold or transported in commerce.

*     *     *     *     *     *

"The intent of this act is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation."

The Constitution of the United States provides, of course, that: "The Congress shall have Power * * * To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." Article 1, § 8, cl. 3.

The Supreme Court has held that, while Congress does not possess the au-

thority to regulate the internal commerce of a state, as such, it does have the power to foster and protect interstate commerce and take all measures necessary or appropriate to that end, although the intrastate transactions of interstate carriers may thereby be controlled. Houston East & West Texas Ry. Co. v. U. S., 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341. Probably the most that can be said of this and other like cases is that they hold that Congress may act in respect of matters in intrastate commerce if those matters substantially affect interstate commerce. The evidence in this case establishes, without question, that the acts of the defendant of which plaintiff complains were retail sales, in a retail shop in Chicago, of clothing which bore marks which were said to infringe. There is no contention, and certainly no evidence, that the course of business of the defendant was based on prior orders and contracts. On the contrary, there is no question but that the goods in question were "goods acquired and held by a local merchant for local disposition." Walling v. Jacksonville Paper Co., 317 U.S. 564, 570, 63 S.Ct. 332, 336, 87 L.Ed. 460. It is true that the goods in question came from out of the state and that when they came from without the state they bore the marks complained of, but they had come to rest within the state, and interstate commerce had certainly ceased. Schechter Poultry Corp. v. U. S., 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947; Higgins v. Carr Bros. Co., 317 U.S. 572, 63 S.Ct. 337, 87 L.Ed. 468; Walling v. Goldblatt Brothers, Inc., 7 Cir., 128 F.2d 778, certiorari denied 318 U.S. 757, 63 S.Ct. 528, 87 L.Ed. 1130.

█ We have observed that "a mark shall be deemed to be used in commerce (a) on goods when it is placed in any manner on the goods or * * * on the tags or labels affixed thereto and the goods are sold or transported in commerce." The specific question before the court is wheth-er or not Congress intended to regulate acts in intrastate commerce which for all that appears in the evidence had no substantial or other effect upon interstate commerce. The plaintiff would have the court punish for acts in purely intrastate commerce without any proof that those acts affect interstate commerce. See analogy in United States Printing Co. v. Griggs, Cooper & Co., 279 U.S. 156, 158, 49 S.Ct. 267, 73 L.Ed. 650. The court does not believe that Congress intended to attempt to regulate transactions in intrastate commerce which are not shown to have a substantial effect upon interstate commerce, for the simple reason that Congress did not have any power under the Constitution to do so. Accordingly, the court is of the opinion that it has no jurisdiction for the reason that the evidence does not disclose that the alleged infringing marks were used by the defendant "in commerce" or that the goods were sold or transported "in commerce."

The court would end this memorandum at this place were it not for the fact that there is excellent authority for a view contrary to that expressed above. Adam Hat Stores v. Scherper, D.C.E.D.Wis., 45 F. Supp. 804. Since this last mentioned authority exists, the ends of justice will probably be better served if the court takes up the second of the two questions above mentioned, that is, the question as to whether or not the marks used by the defendant infringe the trade-mark of the plaintiff, assuming that plaintiff's mark is valid.

The court assumes, without deciding, that plaintiff's trade mark "Season Skipper" for men's boys', women's and girls' overcoats and topcoats is valid in spite of the charge that it is merely descriptive.

The defendant has put in evidence 21 certificates of registration of trade marks on various classes of goods which use either the word "Skipper" or "Season." These trade marks are as follows:

| Registration No. | Date Issued | Class of Goods & Trademark |
|---|---|---|
| 62,999 | June 4, 1907 | "Skipper", Rubber boots and shoes |
| 104,141 | May 4, 1915 | "Little Skipper" boots and shoes |
| 132,333 | June 22, 1920 | "Skipper", hosiery |
| 135,555 | Oct. 12, 1920 | "Skipper", cotton piece goods |
| 146,601 | Sept. 13, 1921 | "Four Seasons Chambray", cotton piece goods |
| 154,694 | Apr. 18, 1922 | "The Crepes of the Four Seasons", women's undergarments, etc. |
| 166,687 | May 22, 1923 | "Three Seasons", knitted fabric underwear |
| 168,712 | May 22, 1923 | "Four Seasons", knitted sweaters and knitted caps |
| 169,712 | June 26, 1923 | "The Four Season Jacket", knitted sport coats, etc. |
| 203,080 | Sept. 8, 1925 | "Four Seasons", woolen goods in the piece |
| 244,853 | July 31, 1928 | "Seasons of the Year", fabrics in the piece of silk, etc. |
| 235,313 | Nov. 15, 1927 | "4 Seasons", hosiery |
| 255,698 | Apr. 30, 1929 | "Seasonall", silk piece goods |
| 298,033 | Oct. 11, 1932 | "The School Season Shoe", misses' and children's shoes |
| 318,026 | Oct. 16, 1934 | "Skipper Fashions", ladies', misses' and children's dresses, coats, etc. |
| 329,617 | Nov. 5, 1935 | "Skipper", men's sport shirts, sweaters and tennis trunks |
| 337,140 | July 28, 1936 | "Season Skipper", men's overcoats and topcoats |
| 340,904 | Nov. 24, 1936 | "The Hit of the Season" children's shoes |
| 351,026 | Oct. 12, 1936 | "Seasontime Prints" piece goods |
| 391,680 | Nov. 18, 1941 | "Season Master Fashioned by Dae Derry", Misses' coats, suits, capes, jackets, and coat and suit ensembles |
| 397,474 | Sept. 8, 1942 | "Skipper", textile fabrics in the piece. |
| 416,147 | Aug. 28, 1945 | "The Bond Four Seasons Coat", girls', misses', and womens' suits, topcoats and overcoats |

92

The word "Season" and the word "Skipper" have been used so many times in connection with clothing that the monopoly in respect to them, if one exists, cannot be held to be broad.

Nevertheless the plaintiff seems to labor under the impression that it has a monopoly not only upon the word "Season" but also upon all combinations of that word with other words, such as "Twin" and "All" and "Zipper." In the court's opinion, it does not have such a monopoly. Even if the words "Season Skipper" cannot be said to be merely descriptive, they certainly closely approach the merely descriptive. The word "Season" is so universally used in connection with men's, boys', women's and girls' clothing that for anyone to contend that he has a monopoly upon the use of that word approaches the absurd. The words "Twin Season" do not look like the words "Season Skipper," and, at least to the mind of the court, convey a different meaning. The words "All Season Zipper" do not look like "Season Skipper" and, to the mind of the court, convey a different meaning.

Furthermore the court cannot find that the words "Twin Season" were used by the defendant except in connection with the words "New", "Climate Tamer," and "Zipper Coat," in the expression "New Twin Season Climate Tamer Zipper Coat," or that the words "All Season" were used except in connection with the words "Zipper Coat" in the expression "All Season Zipper Coat." The court certainly cannot see any infringement in these uses.

The court holds that the words used by the defendant "Twin Season" and "All Season Zipper" do not infringe plaintiff's trade-mark.

Counsel for defendant may prepare and on notice present drafts of findings of facts, conclusions of law, and judgment order, which will give effect to the views herein expressed.