**DAD'S ROOT BEER CO. v. DOC'S BEV-
ERAGES, Inc., et al.**

United States District Court,
S. D. New York.

Dec. 7, 1950.

Krinsky, Levitan & Glassner, of Chicago, Ill., and Campbell, Brumbaugh, Free & Graves, of New York City (Moses Levitan and Theodore J. Levitan, both of Chicago, Ill., of counsel), for plaintiff.

Moses, Nehrbas & Tyler, of New York City (Charles J. Nehrbas, New York City, of counsel), for defendants.

RYAN, District Judge.

Defendants except to the report of the master, submitted upon an accounting ordered following an adjudication of unfair competition.

The report finds that defendants during the period of their offending practices in marketing "Doc's" root beer secured profits totalling $6,275.69 from sales of that product. Plaintiff waived its right to prove damages "other than those resulting from profits which may have been made by the defendants."

Defendants urge, principally, that plaintiff is not entitled to these sums inasmuch as it has not suffered loss, nor been denied profits, as the result of defendants' activities. They assert that plaintiff made no effort to distribute its own root beer in the New York market during the interval of defendants' condemned operations there, and that the parties are not in the same business because plaintiff deals in the flavoring matter contained in the drink while defendants sell the beverage itself. However, the findings of fact, previously filed herein, indicate that plaintiff was in the root beer beverage business, that it marketed its product, and that in this connection, it established a distinctive name, labels, and other identifying characteristics by which its root beer could be distinguished. It advertised its product extensively, and those who were entitled to bottle the beverage

from concentrate prepared and supplied by plaintiff, employed plaintiff's name, devises, and descriptions in the marketing of the drink.

Defendants had been a franchised bottler and distributor of plaintiff's root beer before beginning the production of their competing beverage. Thereupon, the franchise was terminated by mutual consent, and defendants proceeded to supply the former customers with their own product in a guise deceptively similar to plaintiff's, without calling attention to the change in merchandise and, in fact, actively representing that they were still furnishing plaintiff's beverage. Notwithstanding plaintiff's notice and demands that these acts be discontinued, there was no cessation of the above conduct. In the face of their blatant attempt at deception and the palming-off that occurred, defendants' objection comes with little grace.

■ Nevertheless, defendants insist that an accounting of profits is unwarranted as a matter of established judicial precedent. But, in this field a most imprecise standard, replete with vague and general criteria, governs the imposition of a remedy. See, 2 Nims, Unfair Competition and Trade Marks, Secs. 424 et seq. (4th ed., 1947). The cases upon the subject display a multidunious array of factors tending to influence the courts whose ultimate object is to mould relief adequate to satisfy the equities of each varied situation. As said in Nims: "The question as to whether or not the court should order either an accounting of profits or a proceeding to determine the amount of an award of damages seems to be based on so many considerations as to make it largely a matter of discretion." 2, Nims, supra, Sec. 428a, p. 1378.

Here, defendants have profited from unlawfully appropriating plaintiff's reputation for their own benefit, in a scheme which would have deteriorated plaintiff's position in a market it had previously served. It is not a novel principle that a wrongdoer be required to disgorge ill-gotten gains.

■■ In this proceeding, the law of the State of New York with respect to unfair competition is controlling. Radio Shack Corp. v. Radio Shack, 7 Cir., 1950, 180 F.2d 200. The New York authorities are clear that one who has gained unlawfully, as the result of unfair competition, shall not retain his profits. Thus, in Westcott Chuck Co. v. Oneida Nat'l Chuck Co., 1910, 199 N.Y. 247, 92 N.E. 639, it was said: "It is possible that in an action at law for damages proof of actual damage suffered by plaintiff would be necessary to justify more than a nominal recovery. * * * But this action is in equity. The plaintiff prayed as relief that the defendant account for the profits made by it on its sales, and the law seems well settled that equity will treat the wrongdoer as a trustee for the plaintiff so far as the former has realized profits from its acts." 199 N.Y. at pages 251, 252, 92 N.E. at page 640.

This language was quoted with approval in Warren, Inc., v. Turner's Gowns, Ltd., 1941, 285 N.Y. 62, 32 N.E.2d 793, the court stating: "Inability to prove damages would not preclude plaintiffs from recovering, on an accounting, profits realized from sales unlawfully made, together with interest thereon from the time of the commencement of the action. Cutter v. Gudebrod Brothers Co., 190 N.Y. 252, 83 N.E. 16." 285 N.Y. at page 68, 32 N.E.2d at page 795. See also Robert Reis & Co. v. Herman B. Reiss, Inc., Sup.1946, 63 N.Y.S.2d 786.

Moreover, the rule governing federal trademark infringement is to the following effect:

"The right to use a trademark is recognized as a kind of property, of which the owner is entitled to the exclusive enjoyment to the extent that it has been actually used. * * * The infringer is required in equity to account for and yield up his gains to the true owner, upon a principle analogous to that which charges a trustee with the profits acquired by wrongful use of the property of the *cestui que trust*." Hamilton-Brown Shoe Co. v. Wolf Bros. & Co., 1916, 240 U.S. 251, 259, 36 S.Ct. 269, 272, 60 L.Ed. 629.

Upon the above authority it has been held that the infringer must relinquish

profits secured in territory in which the trademark proprietor was not conducting its business. Lawrence-Williams Co. v. Societe Enfants Gombault et Cie, 6 Cir., 1931, 52 F.2d 774, certiorari denied 1932, 285 U.S. 549, 52 S.Ct. 406, 76 L.Ed. 940; see also, L. P. Larson, Jr. Co. v. William Wrigley, Jr., Co., 7 Cir., 1927, 20 F.2d 830.

This rule of the Hamilton-Brown case has found specific expression in New York law with reference to unfair competition. Thus, in Michel Cosmetics, Inc., v. Tsirkas, 1940, 282 N.Y. 195, 26 N.E.2d 16, the court declared: "A wrongdoer who has imitated the containers of the plaintiff and has used the secret formulas and processes belonging to the plaintiff might be compelled to 'yield up his gains to the true owner, upon a principle analogous to that which charges a trustee with the profits acquired by wrongful use of the property of the *cestui que trust*.' Hamilton-Brown Shoe Co. v. Wolf Brothers & Co., 240 U.S. 251, 259, 36 S.Ct. 269, 272, 60 L.Ed. 629. Here it does not appear that the defendants acquired any profits * * *." 282 N.Y. at page 199, 26 N.E.2d at page 17.

Ample authority supports the accounting heretofore ordered. Upon the facts, it would be unconscionable to permit defendants to retain any reward from their illegal enterprise. Nor should the law be such as to offer the slightest encouragement to those who perpetrate the kind of acts herein condemned.

It may well be that this accounting will deprive defendants of some profits legitimately earned by them. Also, to some extent, plaintiff may enjoy a windfall. But, in the circumstances, there is an inability to refine proceedings to the point where each individual sale can be analyzed, the motivations which induced it appraised, and an apportionment made of that which defendants might rightfully keep. To do this, defendants bear the burden of demonstration, which they have not sustained. Courts are willing to accept the above imperfections rather than coddle the wrongdoer. See, Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 1942, 316 U.S. 203, 207, 62 S.Ct. 1022, 86 L.Ed. 1381;

2 Nims, supra, Secs. 425, 426, and upon the facts of this case we have no hesitation so to do.

The remaining exceptions to the report are also without merit. With reference to each of them, the conclusion of the master finds full support in the record of the hearings before him.

The disallowance of the tax credit to Harkavy Beverage Company (paragraph 10, subdiv. (g) of the report) follows logically under the method defendants employed for accurately representing that portion of overhead properly applicable to "Doc's" root beer. The taxes involved are part of overhead, and pursuant to defendants' formula, which governed all other such items, the taxes should have been excluded. The record is unconvincing that a deviation from the formula is required in this instance.

The report of the master is approved. Submit judgment with allowance to the master in the amount requested by him. The services he rendered were efficient, painstaking and intelligent; no objection has been made by counsel to compensation for him in this amount.