## DAD'S ROOT BEER CO. v. DOC'S BEVERAGES, Inc. et al.

### No. 27, Docket 22059.

United States Court of Appeals Second Circuit.

Argued Oct. 3, 1951.

Decided Nov. 26, 1951.

Charles J. Nehrbas, New York City (Moses, Nehrbas & Tyler, New York City, on the brief), for defendants-appellants.

Theodore J. Levitan, Chicago, Ill. (Moses Levitan, Chicago, Ill., and Campbell, Brumbaugh, Free & Graves, New York City, on the brief), for plaintiff-appellee.

Before SWAN, Chief Judge, and CLARK and FRANK, Circuit Judges.

CLARK, Circuit Judge.

The plaintiff is an Illinois corporation, founded as a general carbonated drink manufacturer in 1927. For the last ten years it has concentrated its manufacturing and advertising efforts on its root beer product, Dad's Old Fashioned Root Beer. Though itself marketing this product only in the Chicago area it grants franchises to bottling concerns elsewhere, which then buy the concentrate from it and sell the mixed root beer locally. This is pursuant to a market expansion program begun in 1938 upon which it has spent over $1,000,000 on

nationwide advertising. The defendants are two New York corporations and their four principal officers, all residents of the state of New York. In 1941, plaintiff granted to defendant Harkavy Beverage Co., Inc., the franchise for the Borough of Bronx and the County of Westchester in New York. For the next six years this concern continued to sell there plaintiff's product which it manufactured from concentrate purchased from plaintiff. In 1946, however, the individual defendants formed Doc's Beverages, Inc., the other corporate defendant, and began sometime later to substitute their own product, Doc's Old Fashioned Root Beer, bottled, labeled, and boxed in strikingly similar fashion, on orders for plaintiff's root beer. When plaintiff discovered this fact in March, 1947, it terminated the franchise, and in October of that year filed the complaint in this action in the district court. This complaint charged defendants with trademark infringement and unfair competition through appropriation of good will, corporate name, trademark and distinctive labels, advertising, and bottle shapes, and sought injunctive relief, the profits realized from the sales of Doc's, and general damages. A trial of issues resulted in findings of fact and an interlocutory decree favorable to plaintiff on July 25, 1949, in which the court granted an injunction and directed an accounting before a master.

The district court based its jurisdiction, as the plaintiff had alleged, both on the diverse citizenship of the parties and because the action arose "under the trademark laws of the United States (15 U.S. C.)." It then found "good and valid" and owned by the plaintiff two trademarks registered in the United States Patent Office, one No. 364,823 registered February 14, 1939, and the other No. 399,605 registered January 19, 1943. The first is for the mark "Dad's Old Fashioned" for use upon root beer; the second is for a mark using the label "Dad's Old Fashioned Draft Root Beer," accompanied by the bust of a man

marked "Papa." Although the copying of labels by defendants was almost identical except for the change from "Dad's" to "Doc's," the court made no finding as to infringement or with reference to interstate commerce, but did find unfair competition with plaintiff and with plaintiff's products sold under its two registered trademarks. And in its detailed findings, it recited unfair competition by defendants' advertising in imitation of plaintiff's labels, billheads, bills, and the like, including particularly an imitation of plaintiff's second or more detailed trademark as "intended to lead to confusion." But the findings went somewhat beyond the trademarks to include plaintiff's use of the terms "Papa," "Mama," and "Junior," covering different sized bottles or the three together as the "Family" or "Dad's Root Beer Family," as against defendants' use of the terms "Party," "Family," and "Handy" to differentiate the sizes. The injunction, too, was broader than a mere prohibition of trademark infringement and went to the various acts of unfair competition found.

Defendants did not appeal from this interlocutory decree, nor do they now challenge the injunction or the findings upon which it was based. On the proceedings before the master, plaintiff waived all claim for damages other than defendants' profits. The master found that profits had accrued to Doc's Beverages, Inc., in the sum of $3,633.89, and to Harkavy Beverage Co., Inc., in the sum of $2,641.80, during the infringing period from February 1, 1947, to December 31, 1949, and that no profits accrued to the individual defendants. The court overruled defendants' exceptions to the master's report in a reasoned opinion, D.C.S.D.N.Y., 94 F.Supp. 121, and gave judgment for the plaintiff for these profits, together with interest, making the total sum of $6,840.50 and costs, including the cost of the reference. Defendants do not now challenge the findings as to the amount of profits, but bring before us for review only the legality of the award of profits.[1]

1. Plaintiff does appear to question—as "with poor grace"—the present appeal as raising issues settled by the interlocutory decree. But whatever issues

might have been raised on an appeal from the grant of an injunction, had defendants then sought review, it is clear that in any event all substantive

This issue is presented by the court's unchallenged findings that defendants had engaged in unfair competition, leading to its conclusion that plaintiff was entitled to an accounting of all profits from the sales of its competing root beer. From the evidence it appeared that there was no direct competition between plaintiff and defendants in the New York consuming market, and hence no lost sales of plaintiff's root beer. The nearest distribution points for plaintiff's product were as distant as Buffalo, N. Y., Newark, N. J., and Philadelphia, Pa. Although there was no explicit finding, it seems accepted that defendants limited their sales to the Bronx and Westchester County. Plaintiff asserts an inability to obtain a new bottler for this New York territory because of defendants' acts of unfair competition, but there was no definite proof as to this in the record. Defendants contend that under these circumstances an award of their profits is erroneous.

While the district court reached its conclusion as a matter of state law, which it held controlling, plaintiff argues that the case is controlled by the Lanham Trade-Mark Act, 15 U.S.C.A. §§ 1051–1127. This act took effect July 5, 1947, or some five months after the beginning of the accounting period here. In its grant of remedies for violation of any right of a trademark registrant established in any civil action arising under it, it provides, *inter alia* "and subject to the principles of equity," for the recovery of "defendant's profits," together with plaintiff's damages sustained and costs. The statute further states: "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed," and goes on to authorize an award up to three times actual damage and, where recovery based upon profits is either inadequate or excessive, a judgment in the court's discretion for such sum as is found "to be just, according to

the circumstances of the case." § 35, 15 U.S.C.A. § 1117. This is a broad grant of power, sufficient to authorize the present award if the statutory provision governs. It is obviously intended as an all-inclusive authorization; the reference to the principles of equity is not a throwback or limitation to earlier law, such as Hostetter v. Vowinkle, Fed.Cas.No.6,714, 1 Dill 329, where plaintiff had to adduce evidence of his own lost sales before he could recover defendant's profits. It is, however, derived from, and a broadening of, the provision for remedies for wrongful use of a trademark under the Trade-Mark Act of 1905, 15 U.S. C. § 99, where the infringer's profits on sales went to the owner of the mark unless the infringer showed that his infringement had no cash value in sales made by him, Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 316 U.S. 203, 206, 207, 62 S.Ct. 1022, 86 L.Ed. 1381; and plaintiff was entitled to them, even though it was not carrying on its business itself in the same territory. Hamilton-Brown Shoe Co. v. Wolf Bros. & Co., 240 U.S. 251, 269, 36 S. Ct. 269, 60 L.Ed. 629; Lawrence-Williams Co. v. Société Enfants Gombault et Cie, 6 Cir., 52 F.2d 774, 777, certiorari denied Société Enfants Gombault et Cie v. Lawrence-Williams Co., 285 U.S. 549, 52 S.Ct. 406, 76 L.Ed. 940; L. P. Larson, Jr., Co. v. William Wrigley, Jr., Co., 7 Cir., 20 F.2d 830, certiorari denied Wm. Wrigley, Jr., Co. v. L. P. Larson, Jr., Co., 276 U.S. 616, 48 S.Ct. 207, 72 L.Ed. 733; Century Distilling Co. v. Continental Distilling Corp., D.C. E.D.Pa., 86 F.Supp. 503, 505. The phrase in the former statute which also provided for the grant of an injunction—now covered by § 34, 15 U.S.C.A. § 1116—was "according to the course and principles of equity"; it clearly refers to the general principles which may condition or limit relief, such as the "equitable principles of laches, estoppel, and acquiescence" mentioned earlier in the act. § 19, 15 U.S.C.A. § 1069; and compare holdings that an

issues are fully open on appeal from the final judgment. Bingham Pump Co. v. Edwards, 9 Cir., 118 F.2d 338, certiorari denied Edwards v. Bingham Pump Co., 314 U.S. 656, 62 S.Ct. 107,

86 L.Ed. 525; Victor Talking Mach. Co. v. George, 3 Cir., 105 F.2d 697, certiorari denied George v. Victor Talking Mach. Co., 308 U.S. 611, 60 S.Ct. 176, 84 L.Ed. 511.

award of profits to one engaged in an entirely different business—magazine publication as opposed to retail sales—is inequitable. Triangle Publications v. Rohrlich, 2 Cir., 167 F.2d 969, 974; Time, Inc., v. Life Color Laboratory, 198 Misc. 1038, 101 N.Y. S.2d 586, 588; Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 131, 67 S.Ct. 1136, 91 L.Ed. 1386. Our first task, therefore, is to determine whether federal or state law governs.

Until the advent of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487, in 1938, federal law was accepted as controlling issues of both trademark infringement and unfair competition. But since the advent of the energetic doctrine which takes its name from that case the situation has been confused. Some vigorous judicial claims are still heard for a uniform law; but the major view at least nods in the direction of a state rule, usually hazy, before resorting to the more complete and pertinent federal precedents.[2] The Lanham Act, however, executes a new turn back to uniformity; Judge L. Hand has succinctly pointed out that the "act did indeed put federal trade-mark law upon a new footing," that "it is no longer open to doubt that the present act created rights uniform throughout the Union," and that "Clearly a change, and a most substantial change, was intended, and the question is what that was." S. C. Johnson & Son v. Johnson, 2 Cir., 175 F.2d 176, 178, certiorari denied

338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527. (While the present writer dissented from the decision therein as not giving adequate scope to the new act, his agreement with the quoted views is obvious.) In the same fashion the law of unfair competition with respect to trademarks was expanded. Sec. 43(a), 15 U.S.C.A. § 1125(a), now gives a remedy for use of "a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same" on goods in commerce, in favor of "any person who believes that he is or is likely to be damaged by the use of any such false description or representation." Since the federal courts are given jurisdiction of all actions arising under the act, § 39, 15 U.S.C.A. § 1121, this remedy, too, is now definitely federal. See California Apparel Creators v. Wieder of California, 2 Cir., 162 F.2d 893, 900, note 12, 174 A.L.R. 481, certiorari denied 332 U.S. 816, 68 S.Ct. 156, 92 L.Ed. 393; Callmann, False Advertising As A Competitive Tort, 48 Col.L.Rev. 876, 885; Bunn, The National Law of Unfair Competition, 62 Harv.L.Rev. 987, 998.

More question has arisen as to the extent and meaning of § 44, 15 U.S.C.A. § 1126, which in subsection (h) states that nationals of foreign countries which are parties to certain named international conventions and treaties involving trademarks "shall be entitled to effective protection against unfair competition" and goes on in (i) to specify that citizens or residents of the

2. See, e. g., Judge Wyzanski's able discussion in National Fruit Product Co. v. Dwinell-Wright Co., D.C.Mass., 47 F. Supp. 499, affirmed without determining the issue in Dwinell-Wright Co. v. National Fruit Product Co., 1 Cir., 140 F.2d 618; Pecheur Lozenge Co. v. National Candy Co., 315 U.S. 666, 62 S.Ct. 853, 86 L.Ed. 1103; Landstrom v. Thorpe, 8 Cir., 189 F.2d 46; Campbell Soup Co. v. Armour & Co., 3 Cir., 175 F.2d 795, certiorari denied 338 U.S. 847, 70 S.Ct. 88, 94 L.Ed. 518; Radio Shack Corp. v. Radio Shack, Inc., 7 Cir., 180 F.2d 200; and Jewel Tea Co. v. Kraus, 7 Cir., 187 F.2d 278, with which compare Time, Inc., v. Viobin Corp., 7 Cir., 128 F.2d 860, certiorari denied 317 U.S. 673, 63 S.Ct. 78, 87 L.Ed. 540, and Philco Corp. v. Phillips Mfg. Co., 7 Cir., 133

F.2d 663, 148 A.L.R. 125; also the cases arising since the enactment of the act which are discussed below. Among articles see Zlinkoff, Erie v. Tompkins: In Relation to the Law of Trade-Marks and Unfair Competition, 42 Col.L.Rev. 955; Clark, State Law in the Federal Courts: The Brooding Omnipresence of Erie v. Tompkins, 55 Yale L.J. 267, 282; and the notable article by Professor Charles Bunn, The National Law of Unfair Competition, 62 Harv.L.Rev. 987, wherein he argues that such a national law has existed since and by virtue of the Federal Trade Commission Act of 1914, 15 U.S.C.A. § 45(a)—a conclusion said to be "quite persuasive" in Radio Shack Corp. v. Radio Shack, Inc., supra, 7 Cir., 180 F.2d at page 202, note 1.

United States "shall have the same benefits" as are granted such nationals by the section. Relying particularly upon legislative history, various text writers have found in these provisions a broad grant of a national power of protection against unfair competition.[3] This construction was accepted and followed in Stauffer v. Exley, 9 Cir., 184 F.2d 962,[4] and approved in In re Lyndale Farm, C.C.P.A., 186 F.2d 723, 726, 727. To the contrary is Ross Products v. Newman, D.C.S.D.N.Y., 94 F.Supp. 566, holding that subsection (i) does not create any additional rights beyond those conferred earlier in the act.[5] The issue was not passed upon in Cutting Room Appliances Corp. v. Empire Cutting Machine Co., 2 Cir., 186 F.2d 997, or Kleinman v. Betty Dain Creations, 2 Cir., 189 F.2d 546, which, however, were patent cases. We need not settle this issue here, since the main prohibition against infringement in the act, § 32, 15 U.S.C.A. § 1114,[6] and the quoted provision prohibiting false descriptions of the goods, § 43(a), 15 U.S.C.A. § 1125(a), seem entirely adequate to justify the award absent difficulty with regard to "commerce."

By the express requirement of the two cited sections and the assumption in Stauffer v. Exley, supra, as to any right under § 1126, the infringing use must occur in or affect "commerce," as defined in the act. Before the Lanham Act it was well settled that federal remedies for trademark infringement applied only when defendants' infringing acts were themselves in interstate commerce. United States Printing & Lithograph Co. v. Griggs, Cooper & Co., 279 U.S. 156, 49 S.Ct. 267, 73 L.Ed. 650; Pure Oil Co. v. Puritan Oil Co., 2 Cir., 127 F.2d 6. The definitions of the act show an intent to extend the federal power; but how far is not yet settled. Thus it is stated: "The word 'commerce' means all commerce which may lawfully be regulated by Congress." § 45, 15 U.S.C.A. § 1127, which also sets forth the intent of the act "to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce * * *; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; * * *."[7] Nevertheless in certain cases under the act, the older requirement seems to have been applied more or less explicitly without the need of careful differentiations. See Samson Crane Co. v. Union Nat. Sales, D.C. Mass., 87 F.Supp. 218, affirmed per curiam 1 Cir., 180 F.2d 896; R. P. Hazzard Co. v. Emerson's Shoes, D.C.Mass., 89 F.Supp. 211; C. B. Shane Corp. v. Peter Pan Style Shop, D.C.N.D.Ill., 84 F.Supp. 86; cf. Campbell Soup Co. v. Armour & Co., 3 Cir., 175 F.2d 795, certiorari denied 338 U.S. 847, 70 S.Ct. 88, 94 L.Ed. 518.

3. See, as representative, Rogers, New Concepts of Unfair Competition under the Lanham Act, 38 T.M.R. 259, 267; Ladas, Trade Marks and Foreign Trade, 38 T.M.R. 278, 288; Diggins, Federal and State Regulation of Trade Marks, 14 Law & Contemp.Prob. 200; Callmann, False Advertising As A Competitive Tort, 48 Col.L.Rev. 876, 886–888; Lunsford, Trade Marks and Unfair Competition—The Demise of Erie v. Tompkins, 40 T.M.R. 169, 179–183.

4. Discussed more or less critically in 64 Harv.L.Rev. 1209 and 37 Va.L.Rev. 626; the result is approved in 19 Geo.Wash.L. Rev. 701.

5. Relying, inter alia, upon the later statute, 28 U.S.C. § 1338(b), conferring "pendent jurisdiction" upon the federal courts—an unnecessary grant, it is asserted, if the view of the Stauffer case is correct.

6. While the district court did not explicitly find that defendants had knowledge or notice of the registered marks, yet it was clear that they did, not merely from the correspondence between the parties in the spring of 1947, but also from the notice on the labels which the defendants used during their holding of the franchise and thereafter copied. The intent to confuse by the copying was of course patent, as the court did find.

7. This is in accord with the statement in the Senate Committee Report on the bill that "sound public policy requires that trade-marks should receive nationally the greatest protection that can be given them." U.S.Code Cong.Serv., 79th Cong., 2d Sess.1946, p. 1277.

The point is, however, considered with some care in Stauffer v. Exley, supra, and the conclusion is reached that while the defendants need not themselves be acting in interstate commerce yet their activities must cause some injury to plaintiff's interstate business. The case was sent back for findings upon this issue. See also Chamberlain v. Columbia Pictures Corp., 9 Cir., 186 F.2d 923. At least so much extension would seem requisite in the light of the so strongly stressed intent of Congress. But this still does not leave entirely clear how much evidence of such injury is requisite before the remedies under the act are available. As we have seen, carrying on the same business in a different territory was sufficient to show a wrong even under the former act; and it was to be inferred "that there was a latent demand for plaintiff's goods which it would eventually have supplied, except for the infringement." Lawrence-Williams Co. v. Société Enfants Gombault et Cie, supra, 6 Cir., 52 F.2d at page 777.[8] Here, although the trial court had made no explicit findings on the matter, it is so apparent that the plaintiff's trademarks are used in interstate commerce that returning the case for a finding to that effect would be a pure formalism. Moreover, the inference from the peddling of the same goods is all the stronger here because it does appear that there had been an actual demand which plaintiff had supplied through defendants' franchise until defendants' own breach of faith terminated the supply. In the view of the writer hereof this is a sufficient showing to make the statutory remedies and damages applicable for the period following the effective date of the Lanham Act. If that is so, then the act must apply to the exclusion of state law.[9] For the earlier period, in any event we are thrown back to state law. We agree with the district judge in his conclusion, D.C.S.D.N.Y., 94 F.Supp. 121, that under the New York law the result should be the same; and my colleagues feel that, for lack of findings, affirmance generally should be put upon this ground, rather than that stated above by the writer.

As the district judge pointed out, it is well settled in equity that a trademark infringer is liable as trustee for profits accruing from his illegal acts, even though the owner was not doing business in the consuming market where the infringement occurred. See the specific holdings in Hamilton-Brown Shoe Co. v. Wolf Bros. & Co., and companion cases cited supra, as well as the principle set forth in Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., supra. New York has expanded this rule to permit injunctive relief against unfair competition, even where no lost sales are shown. Michel Cosmetics v. Tsirkas, 282 N.Y. 195, 26 N.E.2d 16. See also Vogue Co. v. Thompson-Hudson Co., 6 Cir., 300 F. 509, certiorari denied 273 U.S. 706, 47 S.Ct. 98, 71 L.Ed. 850; Lady Esther, Ltd. v. Lady Esther Corset Shoppe, 317 Ill.App. 451, 46 N.E.2d 165, 148 A.L.R. 6, and cases collected in annotation following at page 12; Note, 38 Harv.L.Rev. 370.

8. This would seem in substance the view presented in March, Territorial Scope of the Trade Mark Act of 1946, 38 T. M.R. 955, 962–966, at least where the plaintiff's mark is itself first in the field. Another writer suggests, more confidently, that "for the first time their [i. e., federal courts'] jurisdiction clearly extends to the intrastate user of a mark which infringes a mark registered under the Federal Act, as well as to intrastate acts of unfair competition irrespective of the amount in controversy or diversity of citizenship." Robert, Commentary on the Lanham Trade-Mark Act, 15 U.S.C. A. at p. 269 before § 1051.

9. Conceivably there may be some distinction between the unrestricted language of § 1126 and "the sale in commerce" of goods carrying imitation or counterfeit labels of § 1114(1), as well as the causing of falsely described goods "to be transported or used in commerce" of § 1125 (a), making the first named the more complete remedy. But that is believed doubtful under the broad definitions of § 1127 quoted in the text. Since commerce itself means all commerce which Congress may lawfully regulate, and the legislative intent is to give remedies for all deceptive use of marks in such commerce and to protect persons engaged therein against unfair competition, it would follow that a use to the injury of marks which are in commerce is a use in commerce. See March. supra note 8.

True, recovery of defendant's profits seems thus far to have been associated with the working hypothesis that they are a valid measure of plaintiff's lost sales. See Westcott Chuck Co. v. Oneida Nat. Chuck Co., 199 N.Y. 247, 92 N.E. 639; Michel Cosmetics v. Tsirkas, supra. This affirmation does not of itself require the negative, however—that without direct competition in the same geographic area there can be no recovery of profits. We think the force of the precedents cited, re-enforced by the widely quoted and applied federal rule, leads to the contrary conclusion.

For it is well settled that the court "will endeavor to adapt its relief to the general equities of the particular situation, as nearly as it is possible to do so," in designing relief for unfair competition. J. C. Penney Co. v. H. D. Lee Mercantile Co., 8 Cir, 120 F.2d 949, 958. So the New York courts have declared adherence to the principle that the relief is to be a flexible one. Underhill v. Schenck, 238 N.Y. 7, 143 N.E. 773, 33 A.L.R. 303. Here, as in the case just cited, mutual dealings and a contractual business relationship existed prior to an unexcused program of palming off which was intended to, and did, result in purchase-confusion. Of course plaintiff also had the loss of its franchise commissions and concentrate sales which it was enjoying until defendants substituted spurious "Old Fashioned" root beer for the trademarked product. Moreover, plaintiff suffered through the possible deterioration of its advertising effectiveness by the appearance on the public market of a similarly named, but separate, product of the same substantial make-up. A limitation of plaintiff's remedies to an injunction against further appropriation of its labels, devices, and advertising good will, leaving to the defendants the actual profits made through their wrongful acts, would be inequitable and contrary to the general state principles.

Affirmed.

FRANK, Circuit Judge (concurring).

The district judge ignored the Lanham Act. Judge Clark concludes that to make the Lanham Act applicable here, it suffices to show some injury to plaintiff's interstate business. Whether that is enough, I do not care to consider, since there is no finding of such injury. I therefore follow the trial judge. That is, I rest my concurrence on state law alone. Because, then, on my view of the case, the Lanham Act is irrelevant, I do not join in—I neither concur in nor dissent from—that part of Judge Clark's opinion (running from the fifth paragraph through the ninth) which discusses the meaning and scope of that statute.

SWAN, Chief Judge (concurring).

I concur in Judge FRANK'S opinion.

I concur, to the extent indicated, in Judge CLARK'S opinion.