**RADIO SHACK CORPORATION v. RADIO SHACK, Inc.**

No. 9854.

United States Court of Appeals Seventh Circuit.

Feb. 28, 1950.

Edward Sternberg, Chicago, Ill., Sol H. Asbach, Chicago, Ill., for appellant.

James W. Close, W. S. Bodman, G. E. Hale, Chicago, Ill. (Wilson & McIlvaine, Chicago, Ill., of counsel), for appellee.

Before MAJOR, Chief Judge, and KERNER and DUFFY, Circuit Judges.

DUFFY, Circuit Judge.

This is an action for unfair competition. Plaintiff, a Massachusetts corporation organized in 1935, is and has been engaged in the selling of radio and electronic parts and equipment to amateur radio operators, referred to as "ham operators," to servicemen who repair radio sets, to colleges, laboratories, and others. Plaintiff advertises on a national scale, issues catalogues, and does a large mail order business in all parts of the United States. Plaintiff and its predecessors have operated under the business name of "Radio Shack" since 1924.

In July, 1946, the individual defendants named in the complaint organized the defendant corporation under the laws of the

State of Illinois. Defendant Ashbach had been engaged as a distributor of radio parts for some 15 years, and defendant Friedman had been a ham operator since 1935, and in the radio business for about 17 years. Defendant corporation proceeded to conduct its business in direct competition with plaintiff, selling similar articles of radio equipment, advertising in magazines of national distribution, and issuing catalogues or fliers. Mail orders from various persons and concerns throughout the United States accounted for a part of the business of defendant corporation. Defendant corporation claims, however, that a large proportion of its entire business was done in the State of Illinois.

Defendants filed an answer denying unfair competition, and several months later filed an amended answer which presented affirmative defenses of estoppel, laches, abandonment, acquiescence, and that the trade name of "Radio Shack" was *publici juris*. Defendants also filed a counterclaim, based upon an alleged conspiracy between plaintiff and various manufacturers and jobbers to have the manufacturers and jobbers refuse to sell goods and equipment to defendants.

The term, "Radio Shack," refers primarily to that part of a ship where the radio apparatus is located and operated. The term is also applied by ham operators to the location in their homes or other buildings where their radio sending and receiving apparatus is located and operated.

The trial court found that as applied to a business operation, the name, "Radio Shack," refers to the enterprise operated by plaintiff, that customers of radio and electronic equipment are familiar with the phrase as plaintiff's trade name, and that the adoption and use by the defendants of the phrase, "Radio Shack," as a trade name has caused, and its continued use would

cause, confusion in the minds of the customers in the field in which plaintiff and defendants have carried on their business operations, and in the mind of the public generally. In the decree defendants were "permanently enjoined from carrying on business in the name of the plaintiff, or in any approximation thereof likely to confuse purchasers of radio equipment, or in any way infringing plaintiff's trade name." Defendants' counterclaim was dismissed and the court reserved jurisdiction as to accounting and damages.

Some 22 years after plaintiff herein was organized, and long after the plaintiff had widely used its corporate name as its trade name, defendants deliberately went into direct competition, using for all practical purposes the identical corporate and trade name. For some four years prior to incorporation of the defendant company at least one of its officers had knowledge of the plaintiff and of the operation of its business. Sufficient credible evidence sustains the findings of the trial court, and its conclusions of law are justified unless, as defendants claim, Illinois recognizes a most unusual principle of law, which we are bound to apply in the case at bar.

We must follow the rule stated by the Supreme Court in Pecheur Lozenge Co., Inc. v. National Candy Co., Inc., 1942, 315 U.S. 666, 62 S.Ct. 853, 86 L.Ed. 1103, and Fashion Originators' Guild of America, Inc., et al. v. Federal Trade Commission, 1941, 312 U.S. 457, 468, 61 S.Ct. 703, 85 L.Ed. 949, that in an action for unfair competition we are required to apply the appropriate State law[1] which in this case is that of Illinois.

Defendants rely almost entirely on Hazelton Boiler Co. v. Hazelton Tripod Boiler Co., et al., 142 Ill. 494, 30 N.E. 339, 343, decided in 1892. Our labors have been increased considerably by the fact that the

[1] But see interesting article by Professor Charles Bunn in Vol. 62, Harvard Law Review, p. 987 (1949), entitled, "The National Law of Unfair Competition." Professor Bunn cites the provision of the Federal Trade Commission Act of 1914, as amended in 1938, 15 U.S.C.A. § 41 et seq., "Unfair methods of competition in

commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful." § 45(a). His conclusion is quite persuasive that as the act nowhere provides that the jurisdiction of the Federal Trade Commission is exclusive by authorizing enforcement when the public interest is involved, "a court hav-

opinion printed in the Northeastern Reporter and dated March 24, 1892, differs in several material aspects from the opinion printed in Vol. 142 of the Illinois Reports and dated October 14, 1892. The latter opinion is not only later in date, but the Illinois Reports are the official reports for the Supreme Court of Illinois. It is apparent that on a petition for rehearing, the court deleted portions of the opinion which it had released on March 24, 1892.

An examination of the opinion in the Hazelton case on file in the office of the Clerk of the Supreme Court of Illinois discloses those portions of the original opinion which were deleted. Before setting same forth, so far as they may be pertinent to the decision in the case at bar, a review of the facts in the Hazelton case seems desirable.

In 1881 Hazelton invented certain improvements for steam boilers and formed a partnership in New York with one Kennedy to manufacture and sell boilers. The partnership was dissolved and Hazelton went to Illinois. Early in 1884 the partners reconciled their differences and a new partnership was organized under the name of The Hazelton Boiler Company. The manufacture of boilers was undertaken and the product was widely advertised as Hazelton boilers. However, on July 10, 1884, the second partnership was dissolved, and Hazelton sold and assigned all of his interests, including his letters patent, to a brother of his former partner. Kennedy and two brothers continued to operate the business as partners, under the name of The Hazelton Boiler Company. On June 23, 1888, The Hazelton Boiler Company was organized as a New York corporation, and it acquired the business of the Kennedy partnership on April 13, 1889. In the meantime Hazelton had moved to Chicago, and on February 29, 1888, with several associates organized Hazelton Tripod Boiler Company, as an Illinois corporation, which manufactured boilers in the State of Illinois. Both plaintiff and defendant company sold directly to customers. The New York corporation, as plaintiff, sued in a State court of Illinois to restrain the Illinois corporation from using the name, "Hazelton Tripod Boiler Company," and the words, "Hazelton Boiler," and the word, "Hazelton," in their business of manufacturing and selling steam boilers. The Supreme Court of Illinois decided plaintiff was not entitled to injunctive relief.

In its opinion the court pointed out that so far as the suit related to the right of the defendant to make use of its corporate name in the transaction of business, two obstacles confronted the plaintiff, saying: " * * * The first grows out of the fact that the complainant is a junior corporation seeking to contest with a senior corporation the right of the latter to the use of its corporate name; and the second arises from the position of the complainant as a foreign corporation seeking to contest with a domestic corporation the right of the latter to the corporate name given by the sovereignty which created it." The court then strongly emphasized that the incorporation of the defendant corporation antedated that of plaintiff by four months, and that if there were any infringement, it was the plaintiff and not the defendant who was the aggressor. Then follows the paragraph relied on by defendants (with the portion, deleted on the rehearing, *italicized*), to-wit: "But the complainant is in the attitude of a foreign corporation coming into this state, and seeking to contest the right to the use of a corporate name which this state, in furtherance of its own public policy and in the exercise of its own sovereignty, has seen fit to bestow upon one of its own corporations. For such a purpose a foreign corporation, *ordinarily, at least*, can have no standing in our courts. Such corporations do not come into this state as a matter of legal right, but only by comity; and they cannot be permitted to come for the purpose of asserting rights in contro-

ing jurisdiction of a private unfair competition case involving interstate commerce should, therefore, apply the federal law established by the Act," adding that if there were any doubt about this proposition before 1946, it has been dispelled, at least for the most important forms of unfair competition, by Sec. 43(a) of the Lanham Act, 15 U.S.C.A. § 1125(a).

.vention of our laws or public policy. It is competent for this state, whenever it sees fit to do so, to debar any or all foreign corporations from doing business here; and whatever it may do by way of chartering corporations of its own cannot be called in question by corporations which are here only by a species of legal sufferance." In the original opinion, the paragraph just quoted contained the following additional language: *"We would not be understood, however, as holding that cases may not arise where the name of a foreign corporation has so far become its trade-mark or trade name as to entitle it to protection in our courts against infringement caused by the chartering of a domestic corporation by the same name. We only wish to hold that the present case is not of that character."* [2]

We do not know of any State court which has cited the Hazelton Boiler Co. case with approval. On its face, the opinion is legally unsound, and quite understandably other courts have refused approval of its doctrine. Judge Learned Hand, in United States Light & Heating Co. of Maine v. United States Light & Heating Co. of New York, et al., C.C., 181 F. 182, page 184, paid his respects to the Hazelton decision in the following language: "* * * No one contends that a domestic corporation may not get an injunction against another domestic corporation forbidding the piracy of its own name, and this is true as well in the federal as in the state courts. The distinction made in the Illinois decision is that a foreign corporation, which comes into the state by sufferance, cannot prevent the state from naming its own corporations as it will. However, this proves too much, because a court is as much bound by the act of a state government in giving a corporate name, when complaint is made by a domestic corporation, as when by a foreign corporation. The question is not who complains. * * *" [3]

This court in Peck Brothers and Co. v. Peck Bros. Co., 7 Cir., 1902, 113 F. 291, page 301, 62 L.R.A. 81, certiorari denied 187 U.S. 643, 23 S.Ct. 843, 47 L.Ed. 346, emphatically rejected the doctrine announced in the statement from the Hazelton case heretofore quoted, saying: "* * * Is it possible that a sovereignty of a state can be thus invoked to perpetrate a fraud? * * * Then could one who, in connection with a business to which his name had been attached and had given value to it, having disposed of the right to use that name to another, and so by the law prohibited from using it in connection with a like business under circumstances that would work a fraud, be enabled to effect the fraud by simply becoming incorporated under that name under the sovereignty of the state of Illinois. We cannot bend our judgment to the conclusion that a sovereign state designed thus to confer immunity for wrong. * * *"

But defendants repeat again and again that the Peck case was decided before Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and therefore is not controlling, and that the foregoing quotation from the Hazelton case states the applicable rule of law in the State of Illinois; and they confidently and somewhat smugly assert, "The doctrine of the Erie case with its inexorable command * * * dominates the scene."

In the Hazelton case the Illinois Supreme Court gave emphasis to the fact that the plaintiff had not been licensed to do business in that State. Defendants in the case at bar likewise insist that the plaintiff herein is without remedy because of failure to have a license to do business in Illinois. However, there was no legal necessity for plaintiff herein to obtain such a license. It had no headquarters or offices in Illinois; it conducted its business in Illinois by mail. Under such circumstances it is well established that a State

---

2. Two and one-half pages following this language were likewise deleted, but are not pertinent here.

3. In the case of International Committee of Y.W.C.A. v. Y.W.C.A., 194 Ill. 194, 62 N.E. 551, 56 L.R.A. 888, the Supreme Court of Illinois approved the issuance of an injunction which enjoined an Illinois corporation from using the name under which it was incorporated.

license to do business in Illinois is not required. International Text-Book Co. v. Pigg, 217 U.S. 91, 106–107, 30 S.Ct. 481, 54 L.Ed. 678, 27 L.R.A., N.S., 493, 18 Ann.Cas. 1103; North American Co. v. Securities & Exchange Commission, 327 U.S. 686, 695, 66 S.Ct. 785, 90 L.Ed. 945; Lehigh Portland Cement Co. v. McLean, 245 Ill. 326, 92 N.E. 248, 137 Am.St.Rep. 322; American Art Works v. Chicago Picture Frame Works, 264 Ill. 610, 106 N.E. 440; Hagen Paper Co. v. East St. Louis Pub. Co., 190 Ill.App. 581.

In the recent case of Metropolitan Opera Ass'n, Inc., v. Metropolitan Opera Ass'n of Chicago, Inc., et al., D.C., N.D.E.D.Ill., 81 F.Supp. 127, wherein a foreign corporation was plaintiff, the learned trial judge, who has had long experience with Illinois law, granted an injunction restraining the defendant, an Illinois corporation, from using the word, "Metropolitan," although that word was a part of its corporate name. The court distinguished this case from the Hazelton case on the ground that the controlling circumstances on which that decision was based were that there could not be confusion in the minds of the prospective purchasers. Further, the court was of the opinion that in view of the Y.W.C.A. case, supra, the doctrine hereinbefore quoted from the Hazelton case[4] is no longer the law of Illinois.

The statement in the Hazelton opinion[4] hereinbefore quoted and relied upon by defendants has not been expressly overruled by the Illinois Supreme Court. When we consider the contents of the portions of the original opinion which were deleted upon rehearing, we have no doubt of the attitude of the court at that time on the principle of law there expressed. Although we are quite convinced that if this question were before the Illinois Supreme Court today it would overrule the unsound and archaic doctrine of the quoted portion[4] of the Hazelton opinion, we are compelled to hold that as applied to the facts of that case it states the Illinois rule. However, in spite of some broad generalizations in the Hazelton opinion, we are entirely justified in not extending the unsound doctrine there announced beyond a situation comparable to the facts in that case.

We believe that the case at bar can be fairly and adequately distinguished from the Hazelton case. In Hazelton, each corporation was selling boilers direct to customers at points nearly 1,000 miles apart, and they were not in fact in competition. Here there is no question as to the competition between the plaintiff and the corporate defendant. In Hazelton, defendant was incorporated in Illinois prior to the date of plaintiff's incorporation. Here the corporate defendant was incorporated in 1946, with at least some of the incorporators knowing of the plaintiff and its business activities, whereas plaintiff had been incorporated in 1935. In Hazelton, the court placed considerable emphasis on the right of a person (Hazelton) to use his own name in his business. In considering the form of the assignment which Hazelton had made [30 N.E. 345] the court stated: "* * * We therefore think that the intention on the part of Hazelton to divest himself of the right to use his own name in any business in which he might see proper to engage is not shown with such clearness and certainty as would justify the courts in undertaking to enforce it." In the case at bar the element of the use of one's own name in his business is not present.

■ We hold that the rule of law recognized in the State of Illinois does not bar the plaintiff herein from seeking and securing an injunction against an Illinois corporation pirating its name and its business.

■■ We pass now to a consideration of the defendants' claim that the plaintiff's trade name is not composed of coined or fanciful words so as to merit protection under the principles of the law of unfair competition. True it is that "Radio Shack" is a descriptive term, but when plaintiff's predecessor started to use the term in 1924 and when plaintiff was organized in 1935 and continued to use it, these words had

4. But with the deletions, as *italicized*.

not previously been used to indicate a merchant of radio equipment. Thus, as applied to such a business the words were arbitrary and fanciful. A trade name will be protected even though the words are of a descriptive character if they have acquired a distinctive meaning in the market place. Plaintiff offered proof that customers and users of radio equipment recognized their trade name, "Radio Shack," as identifying their business, and the district court so found. There is no sound basis for disturbing that finding, and we approve it.

■■ Defendants argue that as plaintiff does not manufacture the goods it sells, it follows that there cannot be customer confusion. But as this court pointed out in Consumers Petroleum Co. v. Consumers Co. of Illinois, 7 Cir., 169 F.2d 153, 162, it is the confusion of origin or sponsorship, and not the confusion of goods, which is the controlling factor. A corporation may build up a fine reputation for financial responsibility, and business integrity and fair dealing, in the field within which it transacts its business, in which event its trade name should ordinarily be entitled to protection. The wrong in this case consists in a realization on the plaintiff's general reputation—an appropriation of plaintiff's good will by confusing the minds of prospective customers as to the identity of the dealer who is offering the goods to the public. In all cases of unfair competition, it is principles of old fashioned honesty which are controlling. J. I. Case Plow Works v. J. I. Case Threshing Machine Co., 162 Wis. 185, 201, 155 N.W. 128.

■ In an amended answer defendants plead various affirmative defenses, such as estoppel, laches, abandonment, and acquiescence, and that the trade name of "Radio Shack" was *publici juris*. Defendants argue that as plaintiff did not answer or reply to these defenses, they stand admitted by the pleadings. This point is not well taken. Rule 7(a), Federal Rules of Civil Procedure, 28 U.S.C.A., provides that there shall be a complaint and an answer, and there shall be a reply to a counterclaim denominated as such. After referring to cross-claims and third-party complaints and answers thereto, the rule provides that no other pleadings shall be allowed, except that a court may order a reply to an answer or a third-party answer. Here there was a reply to the counterclaim, but the court did not order a reply to the affirmative defenses. As a matter of pleading they stand denied. Rule 8(d), F.R.C.P.

■ Defendants' argument that plaintiff has abandoned its trade name and has acquiesced in its use by others, and that it is guilty of laches and is now estopped to assert its rights in its trade name, and that "Radio Shack" is *publici juris*, is based on the following showing. In the State of New York for some years past a business has been conducted under the name of "Uncle Dave's Radio Shack"; that in Green Bay, Wisconsin, one Jarvis conducted a small shop under the title, "Radio Shack," which was devoted largely to local radio repair work, but did sell some broadcast radio parts on a local basis; and that Radio Shacks have been registered in Los Angeles, California, and Detroit, Michigan. There was also introduced in evidence a letter written by a clerk of the plaintiff (without the authority of its officers) stating that plaintiff had no objection to the use by Jarvis of the name, "Radio Shack," in his business in Green Bay. The trial court found that Jarvis was not in competition with plaintiff. As to the registrations in Los Angeles and Detroit, registration without proof of user is not a sufficient defense. It is user, not registration, that confers rights in a trade name. Harvey v. American Coal Co. et al., 7 Cir., 50 F.2d 832, 835.

The testimony herein showed that other than the plaintiff and the defendant corporation none of the other Radio Shacks mentioned by defendants had ever advertised in magazines of national circulation except "Uncle Dave's Radio Shack," whose proprietor used the name, "Uncle Dave's Radio Shack," in advertisements run in December, 1931, and in February and October, 1932. At the same time and since he also operated his business under the name, "Fort Orange Distributing Company." Jarvis of Green Bay did not start in business until six months before the corporate defendant

herein was organized. The New York corporation, "Radio Ham Shack," was also organized about six months prior to the defendant corporation, but none of the individual defendants had ever heard of it. The president of the plaintiff corporation and several witnesses of prominence in the radio industry testified they did not know of the use of "Radio Shack" in connection with the business of selling radio parts and equipment by anyone except the plaintiff until the defendant corporation adopted the same trade name. The findings of the trial court overruling the various affirmative defenses are not clearly wrong, and we shall therefore not disturb such findings.

■ Defendants urge that the district court erred in dismissing the counterclaim and point out that they had demanded a jury trial on those issues. Defendants state further that at a pre-trial conference it was agreed that only the question of an injunction would be first tried. Apparently the district judge and counsel for the plaintiff did not so understand, or agree to a piecemeal trial of the issues herein. It is unfortunate that at the conclusion of the pre-trial conference the district judge did not dictate or direct an order setting forth specifically any stipulations that may have been agreed upon.

Pre-trial conferences should be given every possible encouragement by the courts. Many crowded dockets have been brought up to date or at least greatly eased as a result of pre-trial conferences. Here the trial court very appropriately conducted such a conference. Twenty-seven pages of the printed record are devoted to what is designated as "Argument on Pre-Trial Conference." It is apparent that this so-called argument is a report of a colloquy between the court and counsel. We cannot find any statement of an understanding that the issues raised by the counterclaim would be separately tried. There was an agreement that the question of an accounting should be deferred until it was determined whether an accounting would be necessary. Furthermore, counsel for the defendants replied in the negative when the court asked at the pre-trial conference, "There won't be a jury in this case?" It is also of some significance that at the trial certain questions were asked of witnesses by counsel for the defendants which could only have been material to the issues raised by the counterclaim. We find no error in the court's dismissal of the counterclaim.

■ There remains for consideration the question of an accounting. It does not follow as a matter of course that in addition to an injunction a winning plaintiff in every case of unfair competition is entitled to a monetary award in the form of damages or an accounting of profits. Consumers Petroleum Co. v. Consumers Co. of Illinois, supra, 169 F.2d page 163. The character of the conduct giving rise to the unfair competition is relevant to the remedy which should be awarded. Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 130, 67 S.Ct. 1136, 91 L.Ed. 1386. In the case at bar there was no proof of palming off of goods by defendants, nor of fraud, except in so far as knowingly adopting the same trade name as plaintiff should and must be considered fraud. At the time of the oral argument in this court counsel for defendants represented that steps had been taken by his clients to avoid confusion on the part of purchasers and the public by adding the words, "of Chicago, Illinois," after defendants' corporate trade name. Under the circumstances of this case we are of the opinion that the injunction as entered by the district court satisfies the equities of this case.

Except for the modification of eliminating Paragraph 4 pertaining to an accounting and damages, the judgment herein is affirmed, with costs allowed to the plaintiff.