**JOHN MORRELL & CO., Plaintiff-Appellee,**

v.

**RELIABLE PACKING CO., Defendant-Appellant.**

**No. 13279.**

United States Court of Appeals
Seventh Circuit.

Oct. 18, 1961.

John C. Brezina, John F. Brezina, Chicago, Ill., for defendant-appellant.

G. Cabell Busick, Washington, D. C., Gerrit P. Groen, Dean A. Olds, Chicago, Ill., Boynton P. Livingston, Washington, D. C., for plaintiff-appellee; Byron, Hume, Groen & Clement, Chicago, Ill., Mason, Fenwick & Lawrence, Washington, D. C., of counsel.

Before DUFFY, SCHNACKENBERG and KNOCH, Circuit Judges.

DUFFY, Circuit Judge.

The complaint in this action is in three counts, 1) for statutory trademark infringement, 15 U.S.C.A. § 1114(1); 2) for unfair competition, and 3) for dilution under Chapter 140, Section 22, Illinois Revised Statutes.

In 1937, plaintiff commenced the use of E-Z Cut as a trademark for a certain type of ham. It registered this mark in 1938 (Reg. No. 356791). The registration was obtained after plaintiff disclaimed the term "Cut" apart from the mark shown in the drawing.

There was no hearing or oral argument, the case being submitted to District Judge Sullivan on stipulated facts, depositions and exhibits. Judge Sullivan handed down a memorandum ruling in favor of plaintiff on the question of trademark infringement and also on Count 3 for dilution. An accounting was ordered and attorney fees were allowed. Shortly thereafter, Judge Sullivan died

without having approved the final judgment. Later, Judge Campbell signed the final decree based upon the memorandum of Judge Sullivan. On oral argument before this Court, plaintiff's counsel admitted plaintiff was not relying upon Count 2 of its complaint alleging unfair competition.

Defendant, an Illinois corporation, has been for nearly forty years, engaged in the processing and marketing of pork products including hams. Since 1957, defendant has used "Easy-Carve" on wrappers, labels and in advertising a type of ham from which most of the bones have been removed for easy carving, but without losing the normal configuration of a natural ham. United States Patent No. 2,968,570 covering this process was issued on January 19, 1961.

Defendant uses the name "THOMPSON FARMS BRAND" in large letters usually immediately above the words "'EASY-CARVE' HAM." Immediately below the words "Easy-Carve" ham appeared in smaller letters "Prepared by Reliable Packing Co., Chicago 9, Illinois, USA." The wrapper proclaims in large print "100% full slices to shank. Slices like a loaf of bread." The background is a checker-board effect with green and yellow squares.

Plaintiff is an old, well-established meat-packing firm, selling its first line products under the brand name of "Morrell." When it came out with a new type of ham in 1937, prepared, as it claimed, under a secret process, it customarily sold the ham in wrappers and with labels bearing a red heart within a white heart under which appeared:

MORRELL
E-Z-CUT
Fully Cooked
HAM
SMOKED

The background contained, in numerous places, the words "Fully Cooked."

Plaintiff apparently had some difficulty in 1938 when it obtained Registration No. 356791 under the 1905 Act, for it was necessary for it to file a disclaimer of

the term "Cut" apart from the mark as shown in the drawing. The registration undoubtedly was obtained on the basis of plaintiff's earlier registration No. 353166 for the mark "EZE-E-CUT", although such mark had never been used. Plaintiff's vice president in charge of sales testified he never had heard of the mark "EZE-E-CUT."

Plaintiff strongly emphasizes that its mark has become incontestable under the Trade-Mark Act of 1946. In recent trademark cases which have come before this Court, we have noted increasing use of this argument of incontestability, implying that the owner's rights in the mark have, in some way, been broadened.

■ 15 U.S.C.A. § 1115, Subsection (b) provides:

"If the right to use the registered mark has become incontestable under section 1065 of this title, the certificate shall be conclusive evidence of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate subject to any conditions or limitations stated therein * * *."

This section was intended to protect a registrant from having its mark cancelled by a prior user claiming superior rights.

■ Commissioner Leeds, a well-known trademark authority was the author of the opinion in Rand McNally & Co. v. Christmas Club, 105 U.S.P.Q. 499. We agree with his statements appearing on page 500:

"These statements seem to reflect a misconception of the effect of a registration of a mark, the right to the use of which has become incontestable. The effect of 'incontestability' is a defensive and not an offensive effect. To put it another way, when the right to use a given mark has become incontestable, the owner's rights in the mark are in no wise broadened, but he is free from challenges of his right to continue to use the mark to identify and distin-guish the goods recited in the registration, subject only to the defenses and defects enumerated in Section 33(b) of the statute. * * * Acquisition of an incontestable right to use the mark on a periodical as a result of the filing of an affidavit in accordance with Section 15 will not provide respondent with an 'offensive weapon' of any greater magnitude than that which it has had since the registration issued in 1927."

■ It is user, not registration, that confers rights in a trade name. Radio Shack Corp. v. Radio Shack, Inc., 7 Cir., 180 F.2d 200, 206. See also Campbell Soup Co. v. Armour & Co., 3 Cir., 175 F. 2d 795, 797.

■■ In determining the issue of infringement, the fact that a registered trademark may be valid does not preclude a court's consideration of any inherent weakness in a mark. Quaker Oats v. General Mills, Inc., 7 Cir., 134 F.2d 429, 433. We held in Wilhartz v. Turco Products, Inc., 7 Cir., 164 F.2d 731, 732, that where descriptive words are used in the trademark, the assumption of validity can be easily overcome.

In the landmark case of Kellogg Co. v. National Biscuit Co., 305 U.S. 111, at page 118, 59 S.Ct. 109, at page 113, 83 L.Ed. 73, the Court said: "But to establish a trade name in the term 'shredded wheat' the plaintiff must show more than a subordinate meaning which applies to it. It must show that the primary significance of the term in the minds of the consuming public is not the product but the producer."

■ Pertinent also is our statement in Life Savers Corp. v. Curtiss Candy, 7 Cir., 182 F.2d 4, 7, "* * * The function of a trade-mark is to indicate the origin of the article to which such mark is applied. It may consist of any symbol, emblem, device or words, but its office is to point out distinctly the origin of the article to which it is applied. * * *"

■ Plaintiff has not established any rights to the term "E-Z-CUT" alone. The evidence is overwhelming that plain-

tiff uses the term in combination, "Morrell E-Z-Cut." The term was used as a product name designating a unique type of ham which is, in fact, easier to cut than most hams produced by other processes. Judge Sullivan made no finding of secondary meaning. We held in Wilhartz v. Turco Products, Inc., 7 Cir., 164 F.2d 731, 733, that the absence of such a finding must be construed as a finding that the words had not acquired such meaning. In any event, the record clearly shows that "Morrell" or "Morrell E-Z-Cut" identifies plaintiff as the source of origin of its product. There is absolutely no evidence that anyone has or was likely to associate Easy-Carve with the plaintiff or its product. Plaintiff had the burden of showing a likelihood of confusion of purchasers as to the source of origin of the products. Plaintiff has failed to sustain that burden.

All of the bones but one of defendant's product having been removed, the ham is, in fact, easier to carve. Defendant uses the term in combination with "Thompson Farms Brand", thus clearly indicating the source of origin. We think that this record has not disclosed any predatory conduct on the part of the defendant.

Defendant did file an application to register as a trade-mark the words "Easy-Carve" under the trademark law of Illinois (Ill.Rev.Stats.1955, Chap. 140). This was filed at the inception of its use, apparently before the descriptive manner of its use had been adopted. The individuals involved in the early proceedings were, apparently, confused as to the true nature of trademark rights. However, the Illinois registration carries no presumption of validity. Under the circumstances we do not think that defendant is estopped in the instant case.

Illinois Revised Statutes, Chap. 140, Sec. 22 provides relief may be granted " * * * If there exists a likelihood of injury to business reputation or of dilution of the distinctive quality of the mark * * *." As stated hereinbefore, we think plaintiff has not shown that "E-Z-CUT" has acquired distinc-

tiveness, that is, secondary meaning. We hold plaintiff has not established a claim upon which relief can be granted under the Illinois Statute.

Decree reversed with instructions to dismiss the complaint.