G. LEBLANC CORPORATION, Plaintiff-
Appellant,

v.

H. & A. SELMER, INC., Defendant-
Appellee.

G. LEBLANC CORPORATION, Plaintiff-
Appellee,

v.

H. & A. SELMER, INC., Defendant-
Appellant.

Nos. 13232 and 13233.

United States Court of Appeals
Seventh Circuit.

Nov. 21, 1962.

Rehearing Denied Dec. 17, 1962.

**450**

Edward A. Haight, Roy H. Olson, Chicago, Ill., for G. Leblanc Corporation.

Robert M. Wolters, Chicago, Ill., for plaintiff-appellant.

Benjamin H. Sherman, M. R. Chambers, Chicago, Ill., for H. & A. Selmer, Inc.

Hill, Sherman, Meroni, Gross & Simpson, Chicago, Ill., for defendant-appellee-appellant.

Before HASTINGS, Chief Judge, and DUFFY and SCHNACKENBERG, Circuit Judges.

HASTINGS, Chief Judge.

Plaintiff, G. Leblanc Corporation, brought this action charging defendant, H. & A. Selmer, Inc., with infringement of its patent based upon United States Letters Patent No. 2,627,677, issued to Leon Leblanc on February 10, 1953, on an application filed August 19, 1950, for a "Key Mechanism for Alto and Bass Clarinets," and upon the reissue thereof, Re. 23,725, issued October 20, 1953, on an application filed July 9, 1953.

Plaintiff is a Wisconsin corporation and defendant is an Indiana corporation. Defendant was given written notice of infringement prior to commencement of suit.

Plaintiff is the owner of the original and reissue patents involved in this action.

Plaintiff charged that defendant infringed claims 1, 2 and 4 of patent No. 2,627,677 and claims 1, 2, 4, 5 and 6 of Re. 23,725, but withdrew its charge as to claims 1 and 2 of both the original and reissue patents. Claim 4 of the original patent and claims 4, 5 and 6 of the reissue patent were the subject of the litigation on trial.

Defendant answered denying infringement and alleging invalidity of the patent and reissue patent in suit. Defendant counterclaimed charging plaintiff with infringement of its trademark "Resonite" and the registration therefor, Registration No. 603,005, on clarinets, issued on March 8, 1955, on an application filed May 11, 1954.

Defendant is the owner of its trademark "Resonite" and Registration No. 603,005 and has used such trademark on its clarinets since March 14, 1948.

Defendant charged that plaintiff infringed its trademark "Resonite" by the use of the trademark "Resotone"[1] on clarinets. Plaintiff was given written notice of such infringement. Plaintiff had used its trademark "Resotone" on clarinets since September, 1953.

Defendant's counterclaim further charged plaintiff wtih false marking and unfair competition.

Plaintiff replied to defendant's counterclaim denying trademark infringement, false marking and unfair competition and counterclaimed alleging invalidity of defendant's trademark "Resonite."

After a full trial on all these issues, the district court found that plaintiff's patent No. 2,627,677 was invalid as to claim 4; that plaintiff's reissue patent Re. 23,725 was invalid as to claims 4, 5 and 6 and was *not* infringed by defendant in making and selling its clarinet exemplified by plaintiff's Exhibit No. 1; and that plaintiff take nothing by its complaint against defendant.

The district court further found that defendant's trademark "Resonite," Registration No. 603,005, was valid and *not* infringed by plaintiff's use of its trademark "Resotone"; that plaintiff was not guilty of false marking under the provisions of Title 35 U.S.C.A. § 292(a); that plaintiff had not committed any act of unfair competition with defendant; and that defendant take nothing by way of its counterclaim against plaintiff.

The district court further found that plaintiff take nothing by its counterclaim against defendant.

A decree was entered accordingly and no costs were awarded to either party.

In No. 13,232, plaintiff appeals from that part of the final decree finding its patent No. 2,627,677 invalid as to claim 4; finding its reissue patent Re. 23,725 invalid and not infringed as to claims 4, 5 and 6; and finding that plaintiff take nothing by its complaint.

In No. 13,233, defendant appeals from that part of the final decree finding its trademark "Resonite" and Registration No. 603,005 thereof not infringed by plaintiff's use of its trademark "Resotone"; finding plaintiff not guilty of false marking and unfair competition; and finding that defendant take nothing by its counterclaim.

### No. 13,232

The original and reissue patents in suit relate to a register mechanism on alto and bass clarinets for playing the upper or clarion register thereof.

Leon Leblanc, of Paris, France, the original grantee of the patents in suit was issued United States Letters Patent No. 1,926,489 on September 12, 1933, on an application filed June 1, 1932. This patent recites that the "invention is directed to a wood wind instrument of the clarinet type, with particular regard to key mechanism for particular control of the octave hole and the B flat hole when such holes are segregated." It states that the "primary object of the present invention is the segregation of the octave hole and B flat hole in the provision of a key for selectively controlling either hole * * *." It further discloses the provision of a separate B flat hole and the removal of the register hole from the neck of the instrument to the body of the clarinet, as well as the elimination of long keys to the lower part of the instrument body. It is referred to throughout this proceeding as the expired Leblanc Patent.

Lucien Albert, of Brussels, Belgium, was issued United States Letters Patent No. 1,529,567 on March 10, 1925, on an application filed November 10, 1923. This patent recites that the invention is directed to certain new and useful improvements in wood-wind instruments. It specifies that the object of the inven-

---

1. Plaintiff's trademark is sometimes referred to in this proceeding as "Reso-Tone" and "Resotone."

tion is to provide a mechanism applicable to clarinets of all kinds for the proper actuation of the key pads covering the register and B flat tone holes. A single twelfth or register hole was provided in the body of the clarinet. This is referred to herein as the Albert patent.

Plaintiff contends that the invention as claimed in the two patents in suit consists of removing the twelfth (register) hole from the neck of a bass clarinet and placing it in the body of the instrument and rearranging the key mechanism for controlling the twelfth hole when in such removed position. Plaintiff claims this invention comprises two steps: first, removal of the register hole from the neck of the instrument and providing a single register hole in the body thereof, thus eliminating a second thumb key or a linkage to the lower joint; and second, providing a specific mechanism to effectuate the first step. It is claimed that this mechanism is easier to play, more reliable, simpler and more economical than prior bass clarinet mechanisms.

Both the Albert and expired Leblanc patents were cited by the Patent Office against the applications for the original and reissue patents in suit.

The district court held the claims in suit to be invalid for lack of invention over the Albert and expired Leblanc patents. It further found that "the Patent Office erred in not finding that the differences between the subject matter defined by the claims here in issue and the prior Albert and Leblanc patents are such that the subject matter as a whole would have been obvious, at the time the instant Leblanc invention was made, to a person having ordinary skill in the clarinet art."

The district court summarized its findings relating to the claimed invention over the prior art in its Finding of Fact No. 9, as follows:

"9. Plaintiff, long prior to the invention of the patents in suit, manufactured and sold clarinets like defendant's Exhibit 18,[2] which, Mr. Pascucci[3] admitted, embodied the structure and mechanism of the expired Leblanc patent. The broader aspects of invention claimed by plaintiff for the invention of the patents in suit are present in said defendant's Exhibit 18. All that was necessary to provide the structure of the patents in suit was to change the control of the B flat key cup from the A key to the thumb key, or F sharp key. To do so required only ordinary mechanical skill and not invention, and not only the structure to accomplish this, but the operation of the keys and the results obtained were fully explained in the Albert patent."

It is statutory that a patent shall be presumed valid and that the burden of establishing invalidity shall rest on the party asserting it. 35 U.S.C.A. § 282. This presumption of validity applies to a reissue patent in the same manner as the original patent. 35 U.S.C.A. § 252; England v. Deere & Company, 7 Cir., 284 F.2d 460, 463, (1961), cert. denied, 365 U.S. 870, 81 S.Ct. 904, 5 L.Ed.2d 860.

The statutory presumption of validity is strengthened when the prior art relied upon to invalidate the patent was considered and rejected by the Patent Office. Ekstrom-Carlson & Co. v. Onsrud Machine Works, Inc., 7 Cir., 298 F.2d 765, 768 (1962), cert. denied, 369 U.S. 886, 82 S.Ct. 1160, 8 L.Ed.2d 287, and cases therein cited.

However, strong as such presumption is held to be, and recognizing

---

2. Plaintiff's Leblanc clarinet, which had only a single register hole in the upper body joint (not in the neck) and which eliminated linkage to the lower joint, was commercialized by plaintiff as early as 1947. Plaintiff's witness, Professor Stubbins, conceded that "the key registry mechanism" on Defendant's Exhibit 18 was similar to that shown in the expired Leblanc patent.

3. Plaintiff's president. He stated with reference to defendant's Exhibit 18: "The register hole is on the body. There is no connection to the neck. There is no connection to the lower joints."

that it should not be lightly disregarded, it is not a conclusive presumption. It is rebuttable. Murdock v. Vaughan Novelty Mfg. Co., 7 Cir., 131 F.2d 258, 259 (1942).

In its Finding of Fact No. 7 in the instant case, the district court found that the Patent Office erred in not finding the obvious in considering the subject matter defined by the claims in suit and the cited prior art. Other courts have noted that such errors have resulted in a large "category of patented unpatentables," with the resulting detriment to the parties flowing therefrom. Packwood v. Briggs & Stratton Corp., 3 Cir., 195 F.2d 971, 974 (1952), cert. denied, 344 U.S. 844, 73 S.Ct. 61, 97 L.Ed. 657, and the cited reference to Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 156–158, 71 S.Ct. 127, 95 L.Ed. 162 (1950).

At the trial, the district court had the benefit of stipulations, admissions, documentary and physical exhibits, together with trial briefs submitted by the parties.

Testifying for plaintiff were William Harold Stubbins, an associate professor of band instruments at the University of Michigan, who owns a patent for a device covering a mechanism on a soprano clarinet; Vina Stephan Pascucci, plaintiff's president; Robert Hale Hampel, a production development engineer for plaintiff; Gilbert Richard Marschner, plaintiff's vice-president; and Jack Feddersen, defendant's executive vice-president.

Defendant called as witnesses Pascucci, Marschner and Feddersen; Devoe C. Deford, formerly chief engineer for defendant; and Charles M. Faulhaber, formerly a music teacher and band director who was familiar with defendant's clarinets.

There was an extended examination of certain of these witnesses who qualified as experts concerning the patents in suit, the cited prior art and the exhibits relating thereto. We have carefully examined this record. We have not escaped the usual difficulties confronting a layman who finds himself adrift in the ever-changing eddies generated by such testimony.

Plaintiff lays great stress on its contention that for a long period of time it had been common practice to provide *soprano* clarinets with but a single register hole. At the same time, plaintiff asserts that, prior to Leblanc's invention, it had been the practice to provide *bass* clarinets with two register holes, one on the body and one on the neck of the instrument. It contends that Leblanc was the first person ever to provide a mechanism transferring the teachings from a soprano clarinet to a bass clarinet and that therein lies the claimed invention.

However, it appears that plaintiff sold clarinets embodying the structure of the expired Leblanc patent as early as 1947. It is clear that the expired Leblanc patent and the Albert patent relate to clarinets generally and are applicable to clarinets of all types. The expired Leblanc patent shows only a single register hole in the body of the clarinet. This feature is embodied in the patents in suit.

Our attention has been directed to defendant's chart, in evidence as defendant's Exhibit 2, showing views taken from the patent drawings of the Albert patent, the reissue patent in suit and the expired Leblanc patent. This further demonstrates to our satisfaction that the key manipulation of the specific mechanism of the patents in suit is disclosed in the Albert patent.

We are led to conclude that in the patents in suit Leblanc relied upon his original concept in his expired Leblanc patent, the key manipulation from the Albert patent and the disclosure from Albert of how to alter the mechanism in his expired patent. We agree with defendant that Leblanc's claimed inventions in suit are at best an abortive attempt to extend the monopoly of the expired Leblanc patent.

Plaintiff stresses the wide commercial success of its device and urges this as a strong criterion of invention. However, in a recent case, H. W. Gossard Co. v. J. C. Penney Company, 7 Cir., 304

F.2d 515, 517–518 (1962), Judge Duffy, in speaking for our court, reviewed the applicable law on this issue and concluded there, as we do here, that it could not overcome clear proof of invalidity.

In view of findings of fact and conclusions of law by the district court, for which we find substantial support in the record, that defendant had "intervening rights because of the invalidity of claim 4 of said original patent, there being no valid claim of said original patent that was infringed by defendant and that was carried over into said reissue patent," we hold that defendant properly was permitted to assert such intervening rights under the provisions of Title 35, U.S.C.A. § 252.[4] Equity dictates that plaintiff may not now disturb such intervening rights acquired by defendant. Sontag Chain Stores Co. v. National Nut Co., 310 U.S. 281, 294, 60 S.Ct. 961, 84 L.Ed. 1204 (1940).

In view of our disposition of the claimed invention over the prior art, we deem it unnecessary to pass upon further holdings of the district court finding claims 4, 5 and 6 of Re. 23,725 invalid for other reasons and we expressly refrain from so doing.

■ We conclude that the findings of the district court leading to its conclusions of law holding certain claims of the patents in suit to be invalid for lack of invention over the disclosures of the prior art are amply supported by substantial evidence in the record and are not clearly erroneous. They come within our construction of 35 U.S.C.A. §§ 102, 103, as stated in Armour & Co. v. Wilson & Co., 7 Cir., 274 F.2d 143, 156 (1960) and later in Ekstrom-Carlson & Co. v. Onsrud Machine Works, Inc., 7 Cir., 298 F.2d

765, 769–770 (1962), cert. denied, 369 U.S. 886, 82 S.Ct. 1160, 8 L.Ed.2d 287.

Plaintiff must be said to have "utilized the common teachings of the prior art * * * [and] did nothing that could not have been accomplished by the ordinary person skilled in the art. What patentee did undoubtedly required some skill, but what [it] did cannot be said to rise to the dignity of an invention." H. W. Gossard Co. v. J. C. Penney Company, 7 Cir., 304 F.2d 515, 517 (1962).

We hold that plaintiff's patent No. 2,627,677 is invalid as to claim 4 and that plaintiff's reissue patent Re. 23,725 is invalid as to claims 4, 5 and 6 for the reasons above stated and the judgment of the district court in that respect must be affirmed.

The claims of the patent in suit being held invalid, we need not consider further the question of their infringement.

### No. 13,233

As stated earlier, defendant filed its application for registration of its trademark "Resonite" on May 11, 1954. The trademark was registered in the Patent Office on March 8, 1955 to defendant as Registration No. 603,005 "for clarinets." The trademark as registered consists solely of the single word "Resonite." This is consistent with the language of the application filed therefor.

■ Defendant contends that the question of validity of its trademark "Resonite" is not properly before us because plaintiff did not appeal from that part of the decree finding it valid. However, defendant appealed from that portion of the decree finding no infringement by plaintiff of defendant's mark. A proper defense to alleged infringement is invalidity, and plaintiff may properly

---

4. Title 35 U.S.C.A. § 252 includes the following:

"* * * and the reissued patent, to the extent that its claims are identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.

"No reissued patent shall abridge or affect the right of any person or his suc-

cessors in business who made, purchased or used prior to the grant of a reissue anything patented by the reissued patent, to continue the use of, or to sell to others to be used or sold, the specific thing so made, purchased or used, unless the making, using or selling of such thing infringes a valid claim of the reissued patent which was in the original patent. * * *"

urge that question on appeal as one ground for sustaining the trial court's finding of no infringement. This is so even though we may determine the issue of validity adversely to plaintiff. We look first, therefore, to the question of validity.

Defendant first used this trademark in commerce March 14, 1948. It was first used in defendant's advertising in May, 1948. From May, 1948 to December, 1958 defendant spent $141,239 advertising clarinets bearing this trademark. During that period, defendant shipped 134,982 such clarinets having a wholesale value of $9,000,000 and a retail value of $18,000,000.

Defendant used a series of grade marks to classify its lines of musical instruments as: "Selmer"—top grade; "Signet"—medium grade; and "Bundy"—student's grade.

As shown by its advertising, defendant restricted the use of its trademark to its Bundy grade of instruments advertised for students' use. It was always used in conjunction with the word "Bundy." Although the words were displayed in various ways, the product was represented to be a "Bundy Resonite Clarinet."

Because of the proscription of subsection (e) of 15 U.S.C.A. § 1052 against the registration "of a mark which, (1) when applied to the goods of the applicant is merely descriptive * * * of them," and the many cases holding generally that no one may appropriate a descriptive or geographical term as a trademark, cases such as the one before us usually present a close question of validity.

The word "resonite" is not to be found in Webster's New International Dictionary. Webster defines "ite" as a noun suffix denoting "2. An explosive or any of various manufactured substances, as in lyddite, melinite, ebonite, etc." At best, it must be said that defendant adopted an arbitrary and fanciful word signifying a plastic material used in the manufacture of its Bundy grade of clarinets. It coined a descriptive word indicating a plastic substance.

The advertising represented Resonite to be a material. Typical of such advertising claims is the following taken from plaintiff's Exhibit No. 29–A:

"SELMER SOLVES LOW-PRICED CLARINET PROBLEM!

"Announces Low-Priced Clarinet Manufactured by New Methods to Give Outstanding Musical Quality
* * *

"★ NEW MATERIAL OFFERS TONAL ADVANTAGES

"The new Resonite body material resembles wood in appearance and acoustical quality, yet permits production of an instrument in the economy price field. Selmer tonal experts say it is the finest synthetic material for clarinet construction they have ever tested.

"★ NO CRACKING—NO SWELLING— NO SHRINKING

"The new Resonite body material is virtually impervious to moisture. Cracking due to moisture is completely eliminated in this clarinet. Reaction to temperature change is about the same as for wood, but resonite does not shrink or swell due to atmospheric conditions.
* * *

ASK YOUR LOCAL MUSIC STORE ABOUT THE NEW
BUNDY
RESONITE
CLARINET
* * * "

Accompanying the wording in the advertisement is a picture of the bell end of a clarinet with the legend "BUNDY RESONITE made by Selmer." In addition, there appears a photograph of a man identified as "Geo. M. Bundy, Chairman of Board, H. & A. Selmer, Inc."

There is credible evidence that the purchasing public associates "Bundy Resonite" with defendant company.

 Our study of defendant's advertising and use of its trademark "Resonite" leads us to the conclusion that its narrow use, limited to its Bundy grade of instruments, was primarily in its ref-

erence to this line of clarinets. There is substantial evidence in the record to support the trial court's Finding of Fact No. 18:

"18. The trademark 'Resonite' is an arbitrary and fanciful word and is not purely descriptive. Although defendant at times used 'Resonite' in a descriptive sense as applying to the material of which its Bundy Resonite clarinets were made, it always emphasized the use of 'Resonite' as a trademark for the clarinets themselves."

Such finding is not clearly erroneous.

■ Defendant's contention of validity of its mark is further buttressed by the fact that it used its mark in the trade for about six years before filing for its registration. Its wide usage for this long period, plus the commercial success resulting therefrom, gives added strength to its claim that the mark acquired a recognized meaning in the musical instrument field as applied to its Bundy grade of clarinets. It is use, not registration, that is paramount in establishing rights in a trade name. John Morrell & Co. v. Reliable Packing Co., 7 Cir., 295 F.2d 314, 316 (1961); Radio Shack Corporation v. Radio Shack, 7 Cir., 180 F.2d 200, 206 (1950).

When the record is read in the light of Finding 18 that "it [defendant] always emphasizied the use of 'Resonite' as a trademark for the clarinets themselves," we conclude there is a sufficient showing and finding of secondary meaning. At least, this case lies outside the ambit of Wilhartz v. Turco Products, 7 Cir., 164 F.2d 731, 733 (1947), which held "that the absence of such a finding must be construed as a finding that the words had not acquired such meaning," as cited to this effect in John Morrell & Co. v. Reliable Packing Co., supra, 295 F.2d at 317.

■ Defendant had the burden of proof on this issue and the record is replete with instances showing that defendant's narrow use of its mark as "Bundy Resonite Clarinet" identified defendant as the source of origin of its product.

■ Under these circumstances, we conclude, as did the trial court, that "Resonite" is not a descriptive word in the context of § 1052, supra. It is unique and arbitrary, coined for a particular use. Its narrow use by defendant over a long period of time resulted in its coming to mean defendant's Bundy grade of clarinets in the eyes of the purchasing public. By this business practice, defendant acquired a property right in its mark entitling it to recognition and registration. See Jewel Tea Co. v. Kraus, 7 Cir., 187 F.2d 278 (1950) and Radio Shack Corporation v. Radio Shack, 7 Cir., 180 F.2d 200, 205, 206 (1950). Cf., Armco Steel Corporation v. Watson, D.C.D.C., 188 F.Supp. 554 (1960), citing G. & C. Merriam Co. v. Saalfield, 6 Cir., 198 F. 369 (1912).

We hold that the district court did not err in finding and concluding defendant's trademark "Resonite" to be valid.

We have pointed out defendant's use of grade marks to classify its lines of musical instruments. Similarly, plaintiff used a series of grade marks as: "Leblanc"—top grade; "Noblet"—medium grade; and "Normandy"—student's grade. It is undisputed that its use of its trademark "Resotone" was restricted to its Normandy grade and was always used in conjunction with the word "Normandy" so as to read "Normany Resotone" on its clarinets.

Lyons Band Instrument Company wanted to purchase a clarinet from defendant marked only with "Resonite" and without the name Selmer thereon. Defendant refused but did supply Lyons with a clarinet under the trademark "Resotone." There was no contractual understanding limiting Lyons in the use of this mark and no way a purchaser could tell that the Lyons' "Resotone" clarinets were made by defendant Selmer. It appears that Lyons selected this mark from a list submitted to it by defendant, but there is no showing that defendant ever used the mark "Resotone"

to identify it as the source of the product.

Subsequently, plaintiff obtained written permission from Lyons to use "Resotone" and about September, 1953 began such use in connection with its Normandy line.

█ The test of infringement is whether plaintiff's use of "Normandy Resotone" was *likely* to cause confusion in the minds of the purchasing public so as to mislead a prospective customer "when confronted by somewhat similar trade names singly presented," in this case, "Bundy Resonite." G. D. Searle & Co. v. Chas. Pfizer & Co., 7 Cir., 265 F.2d 385, 388 (1959), cert. denied, 361 U.S. 819, 80 S.Ct. 64, 4 L.Ed.2d 65;[5] 15 U.S. C.A. § 1114.

In determining whether plaintiff's use of "Normandy Resotone" infringed defendant's valid registered mark "Resonite," we are not precluded from considering any inherent weakness in the registered mark. John Morrell & Co. v. Reliable Packing Co., 7 Cir., 295 F.2d 314, 316 (1961).

█ Defendant's mark "Resonite" conferred no rights in its use as descriptive of a plastic material. Its validity attaches only in its indication in the minds of the consuming public of the producer and not the product. Kellogg Co. v. Nat. Biscuit Co., 305 U.S. 111, 118, 59 S.Ct. 109, 83 L.Ed. 73 (1938). The function or office of a trademark is to indicate the origin of the article to which it is applied. Life Savers Corp. v. Curtiss Candy Co., 7 Cir., 182 F.2d 4, 7 (1950).

█ It is true that defendant registered the single word "Resonite" as its mark applied to clarinets. However, the inherent weakness in the mark is shown by the limited narrow use under which its rights must be established, i. e., "Bundy Resonite." Rejecting any side-by-side

visual comparison, the record fails to disclose any substantial evidence that would support a finding of either actual confusion or likelihood of confusion. The meager showing on this issue is wholly inadequate to overcome the findings made by the trial court to the contrary.

We are not aided by the citation of other trademark registrations. Such cases may indicate a general pattern but the evidence frequently varies widely on the question of confusion or likelihood of confusion. The evidence showing the background of the adoption of the mark may be important on the question of intent. G. D. Searle & Co. v. Chas. Pfizer & Co., 7 Cir., 265 F.2d 385, 389 (1959), cert. denied, 361 U.S. 819, 80 S.Ct. 64, 4 L.Ed.2d 65.

The testimony in the record before us is somewhat conflicting and inconclusive on how plaintiff came to adopt its trademark "Resotone." In view of the findings and ultimate holding of the trial court, we shall not undertake to resolve such conflict. We have concluded that the record warrants the inferences drawn by the trial court resulting in its conclusion favorable to plaintiff.

In its Finding of Fact 19, the district court said:

"19. Plaintiff's trademark 'Normandy Resotone' is sufficiently dissimilar to defendant's trademark 'Resonite' whether used as 'Bundy Resonite' or standing alone, so that there is not present a likelihood that simultaneous use of the two trademarks in the same industry will cause confusion in the minds of the purchasing public as to the source of the clarinets bearing one trademark or the other."

The district court's Conclusion of Law 12, holding that plaintiff's use of its trademark "Resotone" had not infringed defendant's registration or rights there-

5. For various statements of the standard laid down by our court that in trademark infringement cases a party carrying the burden is not required to show actual confusion but only a "likelihood of confusion," and cases in support thereof, see National Van Lines, Inc. v. Dean, 7 Cir., 288 F.2d 5, 9, 10 (1961).

under or its use of the mark "Resonite," is consistent with its Finding 19.

We cannot say that the foregoing finding is clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

Defendant argues that the trial court's findings are not based on testimony but on the words themselves and that the "Court of Appeals is in as good a position as the Trial Judge to determine likelihood of confusion." If left to our own devices, we would say that we see no striking similarity in the marks under consideration, when related to the use made of them, as would likely cause confusion in the minds of the purchasing public.

We hold that defendant's mark was not infringed by plaintiff and that the district court did not err in so ruling.

Finally, we reach the issue of false marking and unfair competition raised by defendant in its counterclaim. We confess that we have had difficulty in determining the precise nature of the charge of unfair competition. We have examined the pleadings, the colloquy of counsel at the opening of the trial, the proposed findings and conclusions submitted by each party, the findings and conclusions entered by the trial court and the briefs on file in this appeal. The record on this issue is not clear. Apparently, the trial court treated the issue of unfair competition as related solely to the charge of false marking.

In rhetorical paragraph 12 of defendant's answer to the complaint it is alleged:

"12. Still further answering, on information and belief, defendant avers that plaintiff has come into Court with unclean hands and knowingly committed acts of unfair competition including marking upon, affixing to, or using in advertising in connection with an unpatented key mechanism, the word 'patent' or other word or number importing that said key mechanism is patented, for the purpose of deceiving the public."

This rhetorical paragraph was incorporated by reference as rhetorical paragraph 12 in defendant's counterclaim.

The relief prayed for by defendant in its counterclaim, addressed to this charge, is as follows:

"5. That plaintiff be adjudged guilty of false marking and fined the full amount of $500.00 for every such offense, as provided in Title 35, U.S.C. Section 292(a).[6]

"6. That one-half the penalties imposed on plaintiff for its unlawful false marking be awarded to the defendant, as provided in Title 35, U.S.C. Section 292(b)."[7]

Then followed a prayer for general relief.

The trial court addressed itself to this issue in its Finding of Fact 20 and Con-

---

6. "§ 292. False marking

"(a) Whoever, without the consent of the patentee, marks upon, or affixes to, or uses in advertising in connection with anything made, used, or sold by him, the name or any imitation of the name of the patentee, the patent number, or the words 'patent,' 'patentee,' or the like, with the intent of counterfeiting or imitating the mark of the patentee, or of deceiving the public and inducing them to believe that the thing was made or sold by or with the consent of the patentee; or

"Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented, for the purpose of deceiving the public; or

"Whoever marks upon, or affixes to, or uses in advertising in connection with any article, the words 'patent applied for,' 'patent pending,' or any word importing that an application for patent has been made, when no application for patent has been made, or if made, is not pending, for the purpose of deceiving the public—

"Shall be fined not more than $500 for every such offense."

7. "(b) Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States. July 19, 1952, c. 950, § 1, 66 Stat. 814."

clusions of Law 13, 14 and 15, as follows:

"20. Plaintiff denies, and the Court finds as a matter of fact, that plaintiff had no intention of applying any false marking to or in conjunction with its product either in advertising or otherwise. The Court also find[s] that, in so far as any alleged false marking with reference to copyright is concerned, the plaintiff has not intentionally or willfully applied an unauthorized copyright notice to its publications or any of them."

\* \* \* \* \* \*

"13. Plaintiff is not guilty of mismarking by reason of its having used the words 'patent' or 'patented' in referring to its advertising literature to unpatented key mechanisms and other unpatented features of its clarinet structures.

"14. The plaintiff has not committed any act of unfair competition with the defendant as defined in Title 35 U.S.C. § 392 [292].

"15. Plaintiff is entitled to judgment against the defendant on the defendant's counterclaim."

In paragraph 7 of its final decree, the court ruled "[t]hat the plaintiff is not guilty of false marking under the provisions of Title 35 U.S.C. Section 292(a)."

At the close of the trial, and over defendant's objection, plaintiff was permitted to amend its reply to defendant's counterclaim and plead three special defenses to the charge of false marking, viz: (1) a federal statute of limitations, (2) an Indiana statute of limitations and (3) lack of jurisdiction to try this charge in Indiana, plaintiff being a corporate resident of Wisconsin. In its motion to amend, plaintiff's counsel again pointed out the uncertainty of the nature of the issue of unfair competition.

Defendant introduced considerable evidence addressed to its charges of alleged false advertising and false marking relating to plaintiff's clarinets. It examined plaintiff's president, Mr. Pascucci, at length on this subject. In its brief, defendant makes a sharp attack on Mr. Pascucci's credibility.

The present statute, 35 U.S.C.A. § 292, became effective January 1, 1953. It is penal in nature. It is based on a predecessor statute, 35 U.S.C.A. § 50 (1946 ed.).

The essence of defendant's charge is set out in Part III of its brief filed in this court. The contention is made that about 1946 plaintiff "embarked upon a calculated and deliberate program of false advertising which it continued at least until 1956." It was further asserted that plaintiff "extensively advertised clarinets, using the words 'Patented,' 'U. S. Pat. Pending'; and other words of similar import when, in fact, it had no patents or pending applications covering the mechanisms to which those words referred," and that this "program was in flagrant disregard of the truth and in violation of the public interest."

■ We have carefully reviewed the evidence in the record on this matter. We need not restate it here. The trial court was the judge of the weight and credibility to be assigned to it.

■ Both parties agree that a finding of intent to deceive the public is a prerequisite to finding a party guilty of false marking or false advertising. Guide v. Desperak, D.C.S.D.N.Y., 144 F. Supp. 182 (1956), aff'd, 2 Cir., 249 F.2d 145; Calderwood v. Mansfield, D.C.N.D. Cal., 71 F.Supp. 480 (1947). On this critical element, the trial court's findings favorable to plaintiff are amply supported by the record. We cannot say they are clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S. C.A.

Since this finding is fatal to defendant's right to recovery on this issue, we do not reach and expressly refrain from passing upon the many side issues raised by both parties relating thereto.

We hold that the district court did not err in denying recovery on the alleged violation of 35 U.S.C.A. § 292.

If we have misread the issue of unfair competition and if such a claim is asserted against plaintiff independent of the charge of false marking, then it, too, must fail.

Although this case originated in Indiana, no showing has been made that the rule in that state is different from the one we have announced with reference to other jurisdictions.

Generally speaking, we look to the same set of facts in support of a suit for infringement and one for unfair competition. Jewel Tea Co. v. Kraus, 7 Cir., 187 F.2d 278, 283 (1950), citing Armstrong Paint & Varnish Works Co. v. Nu-Enamel Corp., 305 U.S. 315, 325, 59 S.Ct. 191, 83 L.Ed. 195 (1938).

We need not repeat our discussion of the rule requiring a showing of likelihood of confusion. Further, beginning with Radio Shack Corporation v. Radio Shack, 7 Cir., 180 F.2d 200 (1950), and approved many times since then, we have followed, in a broader vein, Judge Duffy's expression that "in all cases of unfair competition, it is the principles of old fashioned honesty which are controlling." Id. at 206.

The record before us is devoid of any showing that plaintiff practiced deceit or in any way acted so that the purchasing public was likely to believe that plaintiff was in some way connected with defendant or so as to create confusion in the trade as to the source of its products.

We hold that the trial court did not err in finding and holding that plaintiff was not guilty of unfair competition.

With reference to both appeals now before us, each party has urged a number of other propositions in support of its several contentions. We have examined them and either find them to be without merit or not essential to our determination of these appeals.

In sum, we are in complete agreement with the disposition made of this case by the able district judge to whom it was submitted for trial.

For the foregoing reasons, the judgment of the district court appealed from herein in Nos. 13,232 and 13,233 is in all respects affirmed.

Affirmed.